### UNITED STATES v. NADAY et al.

(Circuit Court of Appeals, Second Circuit. November 15, 1899.)

#### No. 27.

CUSTOMS DUTIES—CLASSIFICATION—FANCY LEATHER.

Pieces of leather, cut uniform, 28 inches in width and from 32 to 36 inches in length, having on one side an embossed pattern in silver and other colors, and designed to be cut and used in making dress trimmings, pocketbooks, and other fancy articles, are dutiable under paragraph 340 of the

tariff act of 1894, as leather not specially provided for, and not under paragraph 341, as "skins," or under paragraph 342, as leather cut into forms suitable for conversion into manufactured articles.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decision of the circuit court (92 Fed. 140) which reversed a decision of the board of general appraisers reversing a decision of the collector of the port of New York touching the assessment of certain merchandise for customs duty.

Henry C. Platt, for the United States.

Everit Brown, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The importation in question was made under the tariff act of August 28, 1894. The merchandise is certain so-called "leather gouffré." According to the findings of the board,—and the evidence sustains such findings,—it consists of pieces of thin leather, cut uniform, 28 inches in width and from 32 to 36 inches in length. One side is plain, while the other surface presents an embossed pattern, coated with designs in silver and various attractive colors. These pieces are not used in the imported condition, but are cut up and made into dress trimmings. There is evidence that they are sometimes cut up and used in the manufacture of pocketbooks and other fancy leather goods. Sometimes, when thicker than these at bar, so that the paste will not strike through, they are used as wall decorations. There is no evidence as to the particular kind of hides or skins from which the merchandise was produced, but, as the board found, it is in fact a fancy leather.

The relevant paragraphs of the tariff act are these:

"340. Bend or belting leather, and leather not specially provided for in this act, ten per centum ad valorem.

"341. Calfskins, tanned, or tanned and dressed, dressed upper leather, including patent, enameled and japanned leather, dressed or undressed, and finished; chamois or other skins not specially enumerated or provided for in this act, twenty per centum ad valorem; bookbinders' calfskins, kangaroo, sheep and goat skins, including lamb and kid skins, dressed and finished, twenty per centum ad valorem; skins for morocco, tanned but unfinished, ten per centum ad valorem; pianoforte leather and pianoforte action leather, twenty per centum ad valorem; boots and shoes, made of leather, twenty per centum ad valorem.

"342. Leather cut into shoe uppers or vamps, or other forms, suitable for conversion into manufactured articles, twenty per centum ad valorem."

Originally the customs authorities contended that the articles should be classified under paragraph 353, as "manufactures of leather not otherwise provided for." The circuit court held that under the decision of the supreme court in Dejonge v. Magone, 159 U. S. 562, 16 Sup. Ct. 119, 40 L. Ed. 260, such contention is unsound, and it has now been abandoned by the appellant. It is, however, insisted that the merchandise consists of "leather cut into shoe uppers or vamps, or other forms suitable for conversion into manufactured articles." Manifestly the cutting has not progressed so far as to render the goods suitable for one purpose rather than another, or to a point

which indicates even distantly the probable use of them; and the language of the paragraph seems to indicate that the "forms" referred to are to be characteristic and distinctive, as are the "shoe uppers" and "vamps," which are practically in their ultimate shape. A bolt of flannel 56 inches wide and 100 yards long may by additional cutting be transformed into a coat or into a dress skirt, or into a lap robe, or into a piano cover; but the entire piece would hardly be described as "flannel suitable for conversion into manufactured articles." The case closely resembles In re Mills (C. C.) 56 Fed. 820 (affirmed by this court, without opinion, in 14 U. S. App. 711, 13 C. C. A. 692), where the phrase "partly-made" wearing apparel was construed; and it was held that the process of making up must have progressed far enough to enable us to identify the article it will be made into when completed. We concur, therefore, with the board and with the circuit court in the conclusion that the importation is not covered by paragraph 342.

Paragraph 341 contains several distinct categories. The first contains "calfskins * * * tanned and dressed." As to this, it is sufficient to say that the board has found that there is no evidence from what kind of hides or skins the merchandise is produced. And the same remark will apply to the third category, which contains "calfskins, kangeroo, sheep and goat skins, including lamb and kid skins, dressed and finished." Nor can the merchandise be included in the second category, as "chamois or other skins not specially enumerated or provided for," since it is in fact leather, as the board has found, and as the evidence clearly shows. In the absence of any evidence of commercial designation, we cannot assume that these articles, which have not only been tanned, dressed, and finished, but have also been changed from the distinctive shape which is suggestive of the skin of the animal from which they are taken, are to be classified for duty as "skins," under paragraph 341, when they are aptly described as leather in paragraph 340. The circumstance that the two varieties of leather specifically enumerated in paragraph 340 (bend leather and belting leather) are not of the same character seems not to be a sufficient reason for so restricting the broad phrase, "leather not specially provided for," so as to exclude these articles, which in the ordinary use of language it would fairly cover. The decision of the circuit court directing the classification of the importation under paragraph 340 is affirmed.