### UNITED STATES *v.* HARTWIG (No. 523).[1]

FOX SKINS, DRESSED, DYED, AND POINTED, "MANUFACTURES."

Alaska fox skins that have been dressed and dyed and pointed by the insertion in the fur at intervals of white hairs from the badger, these white hairs being glued to the skin and making them an imitation silver-fox skin, since a new article is thereby made, with a new name, character, and use, constitute a manufacture, but not a manufacture of furs prepared for use as material, and the skins were dutiable at 20 per cent ad valorem, whether taken by similitude as furs dressed on the skin or as nonenumerated manufactured articles.

### United States Court of Customs Appeals, October 16, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7117 (T. D. 31018).

[Affirmed.]

*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

*Brown & Gerry* (*James L. Gerry* and *Allan R. Brown* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the classification of certain fox skins which were entered at the port of New York on October 21, 1909. Some of the skins were assessed for duty by the collector at 50 per cent ad valorem as fur wearing apparel partly made, and some of them at 35 per cent ad valorem as manufactures of furs, under the provisions of paragraph 439 of the tariff act of August 5, 1909, which reads as follows:

439. Furs dressed on the skin, not advanced further than dyeing, but not repaired, twenty per centum ad valorem; manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, including plates, linings, and crosses, thirty-five per centum ad valorem; articles of wearing apparel of every description, partly or wholly manufactured, composed of or of which fur is the component material of chief value, fifty per centum ad valorem. Furs not on the skin, prepared for hatters' use, including fur skins carroted, twenty per centum ad valorem.

---

[1] Reported in T. D. 31976 (21 Treas. Dec., 464).

Objection on several grounds was taken to the classification and the duty assessed, but the claim set up in the protest upon which the importer really relied was that the merchandise imported was dutiable at 20 per cent ad valorem either under the first clause of said paragraph 439 or under paragraph 480, which is as follows:

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

The board was of opinion that the fox skins classified as wearing apparel partly made were at best material prepared for special uses and therefore dutiable at 35 per cent ad valorem. As the importer, however, had not set up that claim in his protest the collector's assessment was permitted to stand.

The fox skins which were classified by the collector as manufactures of furs at 35 per cent ad valorem were held by the board to be similar to furs dressed on the skin and dutiable by similitude under the first clause of paragraph 439 at 20 per cent ad valorem. As to that particular part of the importation the protest was therefore sustained by the board. From the decision overruling the protest as to the articles assessed as "wearing apparel partly made" the importer took no appeal. From the decision sustaining the protest as to the merchandise which was assessed for duty at 35 per cent ad valorem the Government appealed, and that is the appeal which is now before us for consideration.

The goods the classification of which is in controversy are fox skins dressed, dyed, and pointed, and were returned by the appraiser as "manufactures of furs" dutiable at 35 per cent ad valorem under paragraph 439. It appears from the uncontradicted testimony produced on the hearing that the articles in question are made from the pelts of the Alaska fox, which are dressed and then dyed to the general color of the fur of the silver fox. The skins, after dressing and dyeing, are pointed by inserting in the fur at intervals white hairs from the badger, which hairs are glued to the skin to hold them in place. The process of pointing, evidently a tedious one, is intended and designed to give the fur the semblance and aspect of that of the silver fox, a different animal from the one from which the pelt is actually taken. The dressing and dyeing of the furs did not of course make them anything more than furs dressed and dyed on the skin and therefore can not be said to have carried the goods into the category of a manufacture of furs. By the pointing of the furs, however, different materials from independent sources were so artificially brought together that the fur of one animal was given the appearance and, we assume, the more attractive

qualities of another. By the addition of the white hairs of the badger to the original skin the latter was converted into an imitation silver-fox skin, a product which neither in fact nor in trade was a badger skin or an Alaska fox skin, but an entity differing from both and adapted to a commercial use for which neither of its components was fitted or suitable. Such a processing of materials created a new article, with a new name, a new character, and a new use, and therefore, in our opinion, constituted a "manufacture" as that term has been judicially defined. In a well-considered opinion by General Appraiser Fischer (T. D. 22519.) the board held that imitation ermine tails made by combining pieces of black fur with pieces of white fur from the coney were manufactures of furs. In that case it was well said:

> The goods are, therefore, clearly articles manufactured from two kinds of fur and are no longer merely fur. Their character and form have been changed by labor and they have acquired a new name, character, and use, and their classification must follow that changed condition.

What was there declared with reference to imitation ermine tails we think may be applied with equal force to imitation silver-fox skins, the merchandise which is here under discussion.

The dressed and dyed skin of the Alaska fox thus manufactured into an imitation of that of the silver fox has not been further advanced, however, and can no more be considered as a manufacture of furs *prepared for use as material* than could a true silver-fox skin in the same condition. It has not been cut or shaped for a stole, a muff, or a rug, or prepared as material for the making of any specific article or class of articles. In the sense that out of it something may be made, it is of course a material, but it has not been advanced to the point where it can be identified as a material prepared and suitable for any special or definite manufacturing use. We can not, therefore, sustain the Government's contention that the merchandise in issue is a "manufacture of furs prepared for use as material."

No provision having been made in the tariff act of August 5, 1909, for manufactures of furs in general, it would seem that the merchandise in question should be assessed for duty either under paragraph 480 or under the first clause of paragraph 439, by virtue of the provisions of paragraph 481. Under which of these provisions the importation should be assessed for duty it is unnecessary to decide in this case. Whether the merchandise be held to be dutiable under the first clause of paragraph 439 by similitude to furs dressed on the skin not further advanced than dyeing but not repaired, or under paragraph 480 as a nonenumerated manufactured article, the rate of duty would be 20 per cent ad valorem, which was the rate fixed by the board.

The decision of the board must be *affirmed.*