KLEINBERGER & KATZ *v.* UNITED STATES (No. 2460)[1]

LEATHER FORMS FOR PURSES AND BAGS—MANUFACTURES OF LEATHER—BAG LEATHER.

The official sample is an oblong piece of flexible leather about 7 by 9 inches in size, dyed on one side. On the dyed side a formal design is embossed in colors. About three sides of the embossed surface is a finished margin about ¾ inch wide, bordered with a gilt line. The fourth side is unfinished. The merchandise was invoiced as "glove leather." The report of the appraiser, made to the collector after protest, states: "The merchandise in question consists of pieces of sheepskin cut to form and size for use in making purses and bags." It was classified by the collector as manufactures of leather not specially provided for under paragraph 1432, tariff act of 1922. There was no other evidence. The protest claimed classification as bag leather under paragraph 1431, as miscellaneous manufactures under paragraph 1459, or as leather cut into forms under free-list paragraph 1606. The claim under paragraph 1431 should have been sustained.

United States Court of Customs Appeals, April 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 47654

[Reversed.]

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellants.
*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *John A. Kemp*, special attorneys, of counsel), for the United States.

[Oral argument Jan. 16, 1925, by Mr. Place and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BLAND, and HATFIELD, Associate Judges; BARBER, Associate Judge, participating in the decision by agreement of counsel

GRAHAM, Presiding Judge, delivered the opinion of the court:

The articles of importation here are pieces of leather hereinafter more particularly described. They were classified for duty by the collector as manufactures of leather not specially provided for under paragraph 1432 of the tariff act of 1922, which, so far as relevant, is as follows:

1432. Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, not jewelry, wholly or in chief value of leather or parchment, and moccasins, and manufactures of leather, rawhide, or parchment or of which leather, rawhide, or parchment is the component material of chief value, not specially provided for, 30 per centum ad valorem.

The importers protested, claiming the goods to be dutiable under either paragraph 1431 or 1459 of said tariff act of 1922, or free under paragraph 1606 thereof. Said paragraphs are as follows:

1431. Chamois skins, pianoforte, pianoforte-action, playerpiano-action leather, enameled upholstery leather, bag, strap, case, football, and glove leather, finished, in the white or in the crust, and seal, sheep, goat, and calf leather, dressed and finished, other than shoe leather, 20 per centum ad valorem.

[1] T. D. 40798.

1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

1606. Leather: All leather not specially provided for; harness, saddles, and saddlery, in sets or parts, except metal parts, finished or unfinished, and not specially provided for; leather cut into shoe uppers, vamps, soles, or other forms suitable for conversion into manufactured articles; and leather shoe laces, finished or unfinished.

There is no testimony in the record except the report of the appraiser made to the collector after protest. This report states: "The merchandise in question consists of pieces of sheepskin cut to form and size for use in making purses and bags." The official sample is an oblong piece of flexible leather about 7 by 9 inches in size, dyed on one side. On the dyed side a formal design is embossed in colors. About three sides of the embossed surface is a finished margin about three-fourths inch wide, bordered with a gilt line. The fourth side is unfinished. The merchandise is invoiced as "glove leather." The court below overruled the protest and approved the classification of the collector and from that judgment importers appeal.

No serious contention is or can be made under said paragraph 1459. The articles imported being of leather, are, whether manufactured or unmanufactured, more specifically described in paragraphs 1431, 1432, and 1606 than as unenumerated articles. They are not classifiable under paragraph 1459.

There is also no contention here that the articles are glove leather, as invoiced. Nothing appears, either in the record or in argument to throw any light upon that subject, except the simple statement of the appraiser that the articles are "pieces of sheepskin, cut to form and size for use in making purses and bags."

Whether this material can be or is used for any other purpose nowhere appears in the record. The record is also silent as to whether further manufacturing processes are necessary, before this merchandise can be used in making bags. What particular part of the bag or purse can be made from the material is not stated. If the article of importation has any distinctive name, it is not so stated. So far as the record goes, and from all we can gather from an inspection of the sample, the merchandise consists of pieces of decorated leather which may be ultimately used in making bags and purses.

The question then is: Are the goods "bag * * * leather, finished, in the white or in the crust," or "sheep * * * leather, dressed and finished," as provided for in said paragraph 1431, "manufactures of leather * * * not specially provided for," as provided for in said paragraph 1432, or "leather cut into * * * other forms suitable for conversion into manufactured articles," as provided for in said paragraph 1606?

We first inquire as to whether the articles in question here can be properly classified as leather cut into forms suitable for conversion into manufactured articles. The first time this or a similar provision appeared was in the tariff act of October, 1890, in the following language:

457. But leather cut into shoe uppers or vamps, or other forms, suitable for conversion into manufactured articles, shall be classified as manufactures of leather, and pay duty accordingly.

The legislative policy of considering leather cut into forms as manufactures of leather continued until the enactment of the tariff act of August 27, 1894, wherein leather cut into such forms was covered by paragraph 342 and assessed with duty at 20 per cent ad valorem, while paragraph 353 covered manufactures of leather, which were made dutiable at 30 per cent ad valorem. Evidently Congress desired to make a distinction between "forms" and "manufactures" of leather. In the tariff act of July 24, 1897, leather forms again were to be classified as manufactures of leather. The tariff act of August 5, 1909, again separately classified leather cut into forms and manufactures of leather, fixing different rates of duty. In the tariff act of October 3, 1913, manufactures of leather were provided for, while other leather forms than those for use in making boots and shoes were not specifically mentioned. Then followed the tariff act of 1922, where, as we have seen, manufactures of leather, and leather cut into forms, are separately considered and classified.

The courts have had many occasions to construe these provisions of the law. The following decisions of the Board of General Appraisers are cited: In re Schorestene Frères (T. D. 15723); In re Tilge & Co. (T. D. 19417); In re Schorestene Frères (T. D. 23349); and In re Corbett & Co. (T. D. 31742), in all of which strips of cut leather completed ready for use as hat sweats, were held not to be such forms, but manufactures of leather. To the same effect is Tilge *v.* United States (3 Ct. Cust. Appls. 97; T. D. 32360). In United States *v.* Ringk (3 Ct. Cust. Appls. 353; T. D. 32908), leather cut into strips about 1 inch wide and 30 to 36 inches in length, and ready for manufacture into picker straps, was held to be "forms suitable for conversion into manufactured articles." In Devoy *v.* United States (3 Ct. Cust. Appls. 444; T. D. 32360), leather pieces cut to form and manufactured into book backs were held not to be such forms. In Bahnsen *v.* United States (7 Ct. Cust. Appls. 385; T. D. 36962), strips of leather imported to be made into picker straps were held to be forms, the court basing its decision largely upon the facts shown that nothing had been done to the leather except to cut it into forms. In Koken Barbers' Supply Co. *v.* United States (7 Ct. Cust. Appls. 394; T. D. 36966), horsehide leather straps

designed to be converted into razor strops were imported. It was there said:

It is apparent from the foregoing testimony that the importations when entered for duty are merely tanned leather which has been cut into forms suitable to be manufactured into razor strops. The leather itself does not differ in character from the tanned hide out of which it was cut; its form only has been changed. In its condition as entered for duty it is not capable of use as razor strops, nor entitled to bear that name. All of the manufacturing processes which are peculiar to the conversion of leather as material into finished razor strops remain to be applied to the importations after their arrival in this country.

The strips were held to be forms and thus free under the tariff act of October 3, 1913.

In United States v. Naday (98 Fed. 421), pieces of thin leather, cut uniform, 28 inches in width, and 32 to 36 inches in length, with an embossed and colored pattern upon one side, were held to be "leather" and not "forms."

From these authorities we think it may safely be adduced that the phrase "leather cut into * * * other forms suitable for conversion into manufactured articles" means leather which has been cut into forms suitable for conversion into manufactured articles and which leather has not been further advanced or processed and which forms, in themselves, do not constitute manufactures of leather.

It is obvious the articles of importation here do not come within this definition, and hence can not be classified under paragraph 1606.

It remains to be seen whether the articles before us are "manufactures of leather." This court and other courts, having to do with the construction of our customs laws, have had frequent occasion to construe the words "manufactures of" and "manufactured." The decisions are not all harmonious, due to a large degree to the changing language of our customs laws which from time to time called for construction. However, we think a fairly consistent line of authorities exists, which will now be briefly reviewed.

The Supreme Court of the United States, in Hartranft v. Wiegmann (121 U. S. 609), was considering a certain importation of shells which had been cleaned by acid, ground on emery wheels, and etched. They were claimed to be manufactures of shell. The court said:

We are of opinion that the shells in question here were not manufactured, and were not manufactures of shells, within the sense of the statute imposing a duty of 35 per centum upon such manufactures, but were shells not manufactured, and fell under that designation in the free list. They were still shells. They had not been manufactured into a new and different article, having a distinctive name, character, or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws.

In United States v. Dudley (174 U. S. 670), spruce boards and planks, planed on one side and tongued and grooved, were classified

for duty as manufactures of wood. The court held them classifiable as "dressed lumber," stating that articles could only be considered as manufactures of wood when they had been so far advanced as to be capable of use only for a definite purpose, as "sashes, blinds, molding, spars," etc. It was there also said (672) "a new manufacture is usually accompanied by a change of name, but a change of name does not always indicate a new manufacture."

In Anheuser-Busch Brewing Association *v.* United States (207 U.S. 556), the court said:

In opposition to the judgment of the Court of Claims counsel have submitted many definitions of "manufacture," both as a noun and a verb, which, however applicable to the cases in which they were used, would be, we think, extended too far if made to cover the treatment detailed in finding III or to the corks after the treatment. The words of the statute are indeed so familiar in use and of meaning that they are confused by attempts at definition. Their first sense as used is fabrication or composition—a new article is produced of which the imported material constitutes an ingredient or part. When we go further than this in explanation we are involved in refinements and in impracticable niceties. Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary, as set forth and illustrated in Hartranft *v.* Wiegmann (121 U. S. 609). There must be transformation; a new and different article must emerge, "having a distinctive name, character, or use."

To the same effect are United States *v.* Semmer (41 Fed. 324), Baumgarten *v.* Magone (50 Fed. 69), and United States *v.* Meier & Co. (136 Fed. 764).

This court has had frequent occasion to pass upon the question. It first dealt with the matter in Fenton *v.* United States (1 Ct. Cust. Appls. 529; T. D. 31546). The court there cited with approval United States *v.* Dudley, supra, and held:

* * * when merchandise, as in this instance cork bark in its crude state, has been subjected to manipulations which have reduced it to a form and shape so that it can only be used in the manufacture of floats, which is clearly a definite purpose, it has become a manufactured article, and is a manufacture of cork.

In United States *v.* Richter (2 Ct. Cust. Appls. 167; T. D. 31680), it was held that furs sewed together into rugs were manufactures of furs, the conclusion being largely based upon the finding of fact that the "goods are actually rugs when they arrive and that the furs of which they are made have been advanced by processes of manufacture into a definite article which is something more than fur and which has achieved the dignity of another name."

To a like effect are United States *v.* Hartwig (2 Ct. Cust. Appls. 267; T. D. 31976), and Boye Needle Co. *v.* United States (5 Ct. Cust. Appls. 43; T. D. 34009).

In United States *v.* American Express Co. (5 Ct. Cust. Appls. 125; T. D. 34170), pieces of chamois skin, cut to size, and with scalloped edges were held to be not manufactures but chamois skin. United

States v. Foscato (6 Ct. Cust. Appls. 15; T. D. 35251), and United States v. American Express Co. (id. 36; T. D. 35275), are also cited in this connection.

Many of these authorities are excellently reviewed in Ishimitsu v. United States (11 Ct. Cust. Appls. 186; T. D. 38963), in the opinion by Barber, Judge. There, in summing up, it is said:

* * * there still remains the idea that to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or of more than one, it has attained a distinctive name, character, or use different from that originally possessed by the material or materials before being subjected to the manufacturing process.

There is no occasion or necessity here to depart from the definition thus given. It is based upon the substantial authority of many years of judicial construction.

Viewing the case at bar by the light of these decisions, it must appear the goods in question are not manufactures of leather. That they have been processed and subjected to manufacturing is obvious; but there may be, and often is, a clear distinction between an article which has been manufactured and a manufacture of certain material. The one phrase imports a processing operation; the other imports a completed article of commerce. As we have seen, the articles of importation in this case, although subjected to manufacturing processes, so far as the record goes, have not arrived at the stage of completed articles; they have no distinctive name or use. They have been cut to form and size for making purses and bags, but what further manufacturing processes must be used before they can be converted into purses and bags we do not know nor can we tell what other use might be made of these articles. It may be that upon another record, sufficient facts might be developed to bring these articles within the adjudged definition of manufactures, but the record before us falls far short of this and we must take the record as it comes to us. On it, the merchandise can not be classified under paragraph 1432.

The goods should have been classified as bag leather, under paragraph 1431, and the judgment of the Board of General Appraisers is reversed and the cause remanded with instructions to reliquidate accordingly. *Reversed* and *remanded.*

SMITH and HATFIELD, Judges, concur in conclusion reached.

BLAND, Judge, dissenting: It will be noted that the only two items which may be considered as evidence in the record are the appraiser's answer to the protest and the official sample. The decision of the court holds that the article is not a manufacture of leather under paragraph 1432, but is bag leather under paragraph 1431, and that

it is not leather cut into forms suitable for conversion into manufactured articles under paragraph 1606.

While the opinion of the court might reflect the idea that the article is not a manufactured article for the reason that it is not completed, I feel sure the court would not have so concluded if the proof had shown this article had been what I think we are justified in saying it is from such evidence as is in the record. True enough, the whole matter would have been simplified if proof had been introduced establishing the name or use of the article as it comes to us, and further proof showing the definition and characteristics of bag leather would have made the court's task easier and its conclusions more satisfactory.

It is my contention, however, that this court may properly inform itself from recognized authorities as to the definition and characteristics of such articles mentioned in the tariff act as bag leather. While the court might be mistaken as to the relative merits between given authorities on any question, it seems clear that where they are in substantial accord the court is justified in referring to the leading writers on the question for definitions and characteristics of articles the classification of which it is reviewing on appeal. The view is clearly sustained by United States *v.* Merck & Co. (8 Ct. Cust. Appls. 171; T. D. 37288).

I have consulted "Modern American Tanning," volume 2, "Hides and Skins and the Manufacture of Leather," by James Paul Warburg; "Practical Tanning," by Rogers; "Dictionary of Tariff Information," by the United States Tariff Commission; "The Leather Specimen Book," by Frederic W. La Croix; the dictionaries, and other authorities, and from them I reached a conclusion as to the definition and characteristics of bag leather which are not supplied by the record. From these authorities I find sufficient facts to convince me that when Congress enacted paragraph 1431 and referred to bag leather it did not mean leather which had been cut to form for making bags and further highly processed and manufactured toward the completion of the bag, but that it had in mind a definite, general class of leather known as bag leather imported into this country and sold ofttimes in the hide in the same manner as is sole leather, glove leather, and several other kinds of leather; that bag leather so imported may be used for the making of fancy goods of many varieties other than bags. Bag leather is a fancy leather and has characteristics differing from most other leathers, one of which being that it is tanned and prepared without the use of much grease in order to prevent the grease from the leather coming in contact with linings or other fancy materials used in connection with the manufactured article into which the leather goes.

The sample, as it comes before us, and which is evidence from which we may draw all reasonable inferences, is a piece of finely finished leather about 7 by 9 inches, dyed and polished on one side. Around three sides of the finished surface of the leather is an indented margin line about ½ inch from the edge. Inside of this indented parallelogram and about ¼ inch from it is another parallelogram made by a line of indented gilt figures. All of the surface of the finished side, inside of the gilded lines, is a highly embossed figured surface consisting of artistic designs in at least five colors. The importation has the appearance of being the product of elaborate methods of embossing, coloring, and designing directed toward the making of a side of a purse or bag. The appraiser's report states that it is for use in making purses and bags. The record does not disclose that it is a purse side, but if it is used in making purses it would be difficult to ascribe any other use to it than that of a purse side.

Purse sides have been held, by the Board of General Appraisers, by a decision of General Appraiser Somerville, in T. D. 15724 (G. A. 2905), to be a manufacture of leather; and from the description, in the decision, it seems that practically the same article there was under consideration as is under consideration here.

In the above case the competing paragraphs were one covering the manufactures of leather and another covering "leather cut into * * * forms, suitable for conversion into manufactured articles." Other kinds of leather were specifically mentioned, and leather not specially provided for was also referred to in the act. It was not claimed by either side that they should have been assessed except under one of the two paragraphs first above referred to. In the opinion are the following statements:

The merchandise under consideration consists of embossed pieces of leather of rectangular shape, about 5½ by 6½ inches in dimensions, which are properly represented by the sample accompanying the report of the local appraiser, and was imported in September, 1894.

The embossing or stamping is done in a manner to produce figures in relief on one side of the leather, and cost, according to the estimate of the appraiser, "six times the cost of the leather thus cut into shapes."

The articles are commercially known as "leather outsides," being used for the outsides of pocketbooks or money purses.

The collector assessed a duty of 30 per cent ad valorem on the merchandise under paragraph 353, tariff act of 1894, as manufactures of leather not specially provided for in said act.

We find that the leather in question has not only been cut into "forms," but has been advanced beyond this condition by being subjected to an additional process of manufacture by embossing, which largely enhances its value.

For the same reasons set out in this case I am of the opinion that the importation at hand should not be classified as "leather cut into

forms," but upon the reasoning in the case I think the importation at hand is clearly a manufacture of leather.

While the opinion of the court in the case at hand does not in so many words say that if the record had disclosed that these were purse sides, or leather outsides, used for the making of pocketbooks or bags, the court would have held them as manufactured articles, the argument and citation of cases leads one to believe that the writer of the opinion, at least, would not so have regarded these articles even had the record more fully disclosed the name and use of the article.

While I can see that the meagerness of the record in this case is more or less embarrassing to the court and handicaps it in the certainty of its conclusions, I am firmly convinced that the sample shows for itself what it is and, when considered with the appraiser's answer, is sufficient evidence to show the degree of its advancement in manufacture and the part it plays in making the bag. If this were not true in this case, the presence of samples and the use of them as evidence in appellate procedure in the classification of merchandise would seem to be a vain and purposeless thing.—Krusi *v.* United States (1 Ct. Cust. Appls. 168; T. D. 31213); Veit, Son & Co. *v.* United States (11 Ct. Cust. Appls. 81; T. D. 38732); United States *v.* Wertheimer & Co. (2 Ct. Cust. Appls. 454; T. D. 32204). In the last-cited case the evidence of the samples before this court was sufficient even to overcome the presumption of correctness of the finding of the collector.

The court has the mistaken notion that bag leather is all leather that goes into the making of bags. A resort to the authorities, which I am convinced it may properly examine, would have removed this erroneous impression. Probably the opinion in this case was written upon the mistaken notion that bag leather, being all leather that goes into the making of bags, is more specific than a manufacture of leather. Bag leather is a general term. Bag leather does not necessarily go into the making of bags. Bag leather is a step more specific than leather. Surely it could not be contended, if "leather" and manufactures of leather were competing in this case, that the court would hold this product leather and not a manufacture of leather. The fact that "not specially provided for" follows the words "manufactures of leather" in paragraph 1432 does not lessen the relative specificity of the phrase when contrasted with the term "bag leather." This is clearly decided in Knauth, Nachod & Kuhne *v.* United States (4 Ct. Cust. Appls. 58; T. D. 33307).

While it was claimed by the importers in their protest that the importation should have been assessed under paragraph 1431 as bag leather, they at no time insisted, either in their briefs or oral argu-

ment, that such would have been the proper classification. I may be wrong, as I frequently am, but to hold this highly manufactured product bag leather at 20 per cent ad valorem, along with the ordinary importation of bag leather in the hide, uncut, and not further processed than merely finished leather, is not carrying out the evident and manifest intentions of Congress in providing for manufactures of leather.

There have been many attempts to define what is a manufacture of an article. I think the rule is well established that it is an article that has been, by a manufacturing effort or process, advanced and changed from its original condition so that it takes on the characteristics of a different article, and must have attained a different name, character, or use. In other words, it must pass from its original condition to a different condition which may be distinguished by a different name or a different character or use.—Ishimitsu Co. v. United States (11 Ct. Cust. Appls. 186; T. D. 38963).

Assuming that this article was bag leather before it was cut or embossed (and there is nothing in the record to so indicate), has it been changed by a manufacturing process into another article with a different name or a different use? The record is silent as to name, but the appraiser's report gives its use, which is a specific and different use from the general use to which it was put while in the form of bag leather. An examination of the sample is convincing also of the new use as distinguished from the general use.

It may be contended that paragraph 1432, in which the words "manufactures of leather" are found, treats of the finished article, such as bags, baskets, etc., and that, in order for this article to be a manufacture of leather and fall within this paragraph, it would have to be a manufactured article in the same sense that a bag is a manufactured article. I do not think Congress so intended. Congress intended that, if such an important part of a bag or purse as is this purse side which lies before me, is imported into this country, having had so much manufacturing effort expended upon it, it should take the same rate of duty, though valued at less, as the finished bag.

The books are full of examples of articles having the same general characteristics as the one at hand, holding them manufactures of various materials. The proposition that the raw material for a manufactured article may already be a manufactured article, or a manufacture of a material, is too well settled to need citation. This manufacture of leather before me is the material from which the finished purse is made.

In Tilge & Co. v. United States (3 Ct. Cust. Appls. 97; T. D. 32360) leather sweatbands for hats were under consideration. They were the raw materials for making the hats. They were held to be a manufacture of leather and not leather cut into forms, although the

words "manufacture of leather" occurred in a paragraph quite similar to the paragraph in which they appear in the act of 1922. In re Michelin Tire Co., Abstract 21030 (T. D. 29690), chrome leather strips cut into lengths and shapes suitable for automobile treads, and which had been beveled, were held to be manufactures of leather. In re John Russell Cutlery Co. (56 Fed. 221), mother-of-pearl cut into slabs and designed for use in the manufacture of knife handles, was held to be a manufacture of mother-of-pearl, and not under the free list "mother-of-pearl." In this case the slabs of mother-of-pearl were ultimately to become parts of knife handles, but they had only been manufactured to the extent of being cut into slabs, no doubt, of the size and general shape needed for the making of the handle. From mother-of-pearl, an article of general use, they had emerged into a manufacture of pearl with a limited use.

To constitute a manufactured article I do not believe it is a proper statement of the law to say that from the original condition it must emerge into a different article devoted to *one* use. It may be a manufactured article and have several different uses if the advancement made it a different article from the original condition with, at least, one different use. It is needless to multiply citation as to what constitutes a manufacture of an article.

I believe the examination of the sample and the report of the appraiser establish this to be a manufacture of leather; that Congress never intended that forms so cut should be classed under paragraph 1606, but there meant to place chiefly shoe forms and other forms upon which no such elaborate manufacturing effort had been expended as characterizes the importation at hand. (T. D. 15724, supra.) I do not believe we should classify this as bag leather, since there is absolutely no evidence and nothing about the sample indicating that it is made of bag leather. And if it was made of bag leather, it was such bag leather before being cut and further processed toward the completed purse.

There is no attempt in the ruling opinion to get away from the principle of law, well established by this court, that the collector's finding carries with it the presumption of correctness. In this case the collector found that it was a manufacture of leather. This is presumed to be correct until shown to be incorrect. The burden was upon the importers, who protested the classification, to show that the collector's classification was erroneous. This court has held that the official sample is sufficient to overcome the presumption of correctness of the collector's finding. (Wertheimer & Co., supra.) But, in this instance, the examination of the sample in no sense tends to dispute the correctness of the collector's finding, but, in my judgment, conclusively supports it. That a presumption of correctness attaches to the col-

lector's finding, such as to require evidence to remove, is so well settled in this and other courts as to require no citation. (Ishimitsu Co., supra.)

If it were necessary to invoke the principle, which I think is a necessary outgrowth of the foregoing statement of law, I would contend that the assessment by the collector of duty upon a given article under a certain paragraph of the tariff act, carries with it the presumption of a correct finding of every material thing or fact necessary to bring it within the paragraph.—United States v. Schering (123 Fed. 65). In the case at bar, the collector's assessment of duty under paragraph 1432 as a manufacture of leather carries with it the presumption that he found the importation had been so manufactured, or processed, from its original condition as to become another article with a name, or characteristics, or use or uses, different from that of its original condition.

In addition to the presumption of correctness of the collector's finding, the ruling opinion must also necessarily imply a finding by this court that the evidence in the case overcomes the presumption of correctness of the board's finding on the evidence. In other words, this court finds that the board's decision was against the weight of the evidence. This court has stated this principle of law and sustained the board's finding on the weight of the evidence in Downing Co. v. United States (11 Ct. Cust. Appls. 73; T. D. 38730) and in other cases. The classification of the collector and the decision of the board should be sustained.