(C. D. 1806)

H. MUEHLSTEIN & Co., INC.  
F. L. KRAEMER & Co. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 20, 1956)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiffs.  
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of these two protests consists of what is known as hard rubber dust or ebonite dust. Two kinds or grades are involved in the single entry covered by the two protests. One, covered by protest No. 177613–K/4241, is described on the invoice as No. 3, and was assessed with duty at the rate of 25 per centum ad valorem under the provision in paragraph 1537 (b) of the Tariff Act of 1930 for—

Manufactures of india rubber or gutta percha, or of which these substances or either of them is the component material of chief value, not specially provided for * * *.

The other, covered by protest No. 177614–K/4242, is described on the invoice as No. 70/30–S, and was assessed with duty at the rate of 12½ per centum ad valorem under the provision in said paragraph 1537 (b), as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for—

Manufactures composed wholly or in chief value of india rubber known as "hard rubber", not specially provided for, finished or unfinished:
    Other [than syringes] * * *.

In the brief filed on behalf of the Government, defendant, the following is stated:

It is the contention of the Government that the subjects of both protests, Ebonite dust No. 3 and Ebonite dust 70/30–S, are identical for purposes of tariff classification; that both are properly classifiable as manufactures of india rubber or of which india rubber is the component material of chief value under paragraph 1537 (b), *supra*; and that the action of the Collector in classifying Ebonite dust 70/30–S, the subject of Protest 177614–K, as a manufacture of india rubber known as "hard rubber," was in error.

Plaintiffs are apparently in agreement with the defendant that both ebonite dust No. 3 and ebonite dust No. 70/30–S are identical for purposes of tariff classification, but claim that both dusts are properly classifiable under the provision for nonenumerated manufactured articles in paragraph 1558, or, alternatively, as manufactures, composed wholly of hard rubber, under paragraph 1537 (b), as modified.

There is no dispute as to the method by which the imported articles were produced. The record shows that ebonite dust No. 70/30–S is made by adding sulphur to natural crude rubber, vulcanizing the same by the use of heat to form a hard rubber cake or biscuit, and then grinding the cake or biscuit to powder form. Ebonite dust No. 3 is made in the identical manner, the only difference being that, instead of natural crude rubber, a high-grade natural rubber scrap is used.

The merchandise is not sold in the cake or biscuit form, but always in the powdered form. It is used as a "filler" or "reinforcer" in

the manufacture of hard rubber articles. In such use, it is not used as the molding compound out of which the ultimate hard rubber article is made, but is incorporated into the mixture, prepared according to a recipe depending upon the article to be made, and adds certain desirable properties. Thus, in the production of hard rubber battery cases, it makes the processing of the material easier and results in a product having greater tensile strength, impact resistance, and elongation and electrical properties than could be achieved with other or different fillers or reinforcers.

It clearly appears that, as imported, the hard rubber dusts are not dedicated to any one use or class of uses, and that they differ from one another only in the quality of the ingredients and, hence, the degree of desirable properties they may impart to hard rubber articles made with their use.

The record shows that the cakes or biscuits which are ground into the imported dusts are, themselves, hard rubber. That is to say, hard rubber first comes into existence when the crude or scrap natural rubber is mixed with sulphur and combined chemically under heat and pressure. The hard rubber thus produced as cakes or biscuits is a material for further manufacture.

We are of the opinion that the mere grinding of the hard rubber cakes or biscuits into dusts is not such a manufacture as would constitute the dusts manufactures of hard rubber, or, in the language of the statute, "manufactures composed wholly or in chief value of india rubber known as 'hard rubber.'" Such a designation infers the creation of an article distinct from the material of which it is made. When the cakes or biscuits were ground, the resultant product was still a hard rubber material, somewhat advanced over its former condition but still only a hard rubber material.

From the foregoing, it follows that both the classification by the collector of the merchandise covered by protest No. 177614–K, described as No. 70/30–S, and the claim made in each of the protests for duty at the rate of 12½ per centum ad valorem are untenable. The merchandise is not a manufacture composed wholly or in chief value of india rubber known as "hard rubber."

There is no tariff provision in haec verba for hard rubber as a material. Plaintiffs contend that it is merely an advanced state of india rubber material, and, there being no more specific provision therefor, it is classifiable under the provision for nonenumerated manufactured articles in paragraph 1558, citing the well-known case of United States v. Wilkinson Process Rubber Sales Corp., 22 C. C. P. A. (Customs) 60, T. D. 47051. Defendant contends that hard rubber, the material, is a manufacture of india rubber, dutiable as such under the provision therefor in paragraph 1537 (b), citing the equally well-known case of

*Kleinberger & Katz* v. *United States,* 12 Ct. Cust. Appls. 571, T. D. 40798.

Both of those cases related to the distinction made in customs law between a manufacture of a material, and a material manufactured, the former implying, it was said, the creation of a new article having a distinctive name, character, or use from that possessed by the material, while the latter imports a processing operation advancing the material in value or condition but still leaving it a material.

There have been prior decisions of this and our appellate court on the subject of hard rubber dust. In *Herman Weber* v. *United States,* 24 C. C. P. A. (Customs) 349, T. D. 48803, it was held, because of a failure of proof on the part of the importer, that the collector's classification of the merchandise under the provision for manufactures of hard rubber must stand, without an expression on the part of the court as to its correctness. In a later case, reported as *Herman Weber* v. *United States,* 3 Cust. Ct. 8, C. D. 190, upon what appear to be different facts, it was held that hard rubber dust was not a manufacture of hard rubber but was a manufacture of india rubber, the reasoning apparently being that at no time during the process of manufacture was the material known as hard rubber produced.

We think the present record conclusively establishes that the material, hard rubber, was produced when the hard rubber cake or biscuit was made, and that the imported dusts represent an advanced form of that material. Because of the difference in the record facts, the later *Weber* case is not a controlling authority herein, although as appears hereinafter, our conclusion is the same as reached in that case.

Counsel for the Government, in the brief filed in its behalf, bases the contention for classification under the provision for manufactures of india rubber upon the fact that the dusts at bar are different from india rubber, having a distinctive new name, to wit, as a filler in making hard rubber articles, both different from those possessed by the materials, natural crude rubber and scrap crude rubber, from which they were made. Counsel mentions that the imported product has a distinctive new character, as well, but fails to specify in what details this is exhibited. However, this is not apparently necessary, inasmuch as the requirements for a manufacture of a material are generally expressed in the disjointive as a "distinctive name, character, or use" (see *Kleinberger & Katz* v. *United States, supra,* and cases cited therein). Moreover, since it appears that it is one of the characteristics of natural rubber that it is soft, the transformation into a hard material would seem to indicate a change of character as well.

It, therefore, follows that there was such a change wrought by the processes to which the original natural scrap or crude rubber material

was subjected as to confer upon the resultant product the tariff status of a manufacture of india rubber.

Plaintiffs' argument that the processes applied to the india rubber materials still left the dusts at bar a material for use in further manufacture rather than completed articles fails to take into consideration the fact that, in a tariff structure, there may be what might be referred to as a "pyramiding of manufactures," such as was suggested in the case of *Tide Water Oil Co.* v. *United States*, 171 U. S. 210, wherein it was said:

> The material of which each manufacture is formed, and to which reference is made in § 3019, is not necessarily the original raw material—in this case the tree or log—but the product of a prior manufacture; the finished product of one manufacture thus becoming the material of the next in rank. * * *

All of the protest claims in each case are, therefore, overruled, and judgment will issue accordingly.