## AARON BROTHERS

### v.

## UNITED STATES.

**Protest 64/7485–75585; C.D. 3314.**

United States Customs Court,
First Division.

Feb. 28, 1968.

Glad & Tuttle, San Francisco, Cal. (Robert Glenn White, San Francisco, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Arthur E. Schwimmer and Andrew P. Vance, New York City, trial attorneys), for defendant.

Before WATSON and BECKWORTH, Judges.

BECKWORTH, Judge:

The merchandise involved in this case, described on the invoice and entry as picture frame moldings, was imported from Belgium and entered at the port of Los Angeles on June 13, 1962. It was assessed with duty at 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, 84 Treas.Dec. 403, T.D. 52373, and Presidential proclamation, 85 Treas. Dec. 138, T.D. 52476, as manufactures of wood, or of which wood is the component material of chief value, not specially provided for. It is claimed to be properly dutiable at 10 per centum ad valorem under paragraph 1558 of said

tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas.Dec. 121, T.D. 52739, as nonenumerated manufactured articles. The protest was abandoned as to a claim that the merchandise was entitled to free entry under paragraph 1803.

The pertinent provisions of said tariff act, as modified, are as follows:

Paragraph 412, as modified:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

\* \* \* \* \* \* \* \*

Other (except \* \* \*) ..................... 16⅔% ad val.

Paragraph 1558, as modified:

Articles manufactured in whole or in part, not specifically provided for (except \* \* \*) .......... 10% ad val.

———◆———

At the trial, plaintiff called Allmore S. Aaron, a partner of the firm of Aaron Brothers Company. He had been associated with the firm for a little over 20 years and stated that it was in the art and picture frame business and sold all over the United States at wholesale and at retail. The witness' duties are in the areas of buying, selling, and public relations. He travels to his firm's wholesale showrooms in the East, South, and Midwest.

Mr. Aaron said he had purchased the merchandise at bar and produced illustrative samples in their condition as imported except as to length. They were received in evidence as plaintiff's exhibits 1 through 8.

The witness testified that the merchandise is designated as moldings and is ordered from the manufacturer in Ghent, Belgium, by number. He had seen such merchandise manufactured and described the method as follows:

Raw lumber is fed through saws, which cut it into the approximate width and thickness in the rough stage; and then it goes through a machine called a sticker, which has a multitude, or half a dozen different kinds of knives that revolve at extremely high speeds; and a length of this lumber is fed automatically through the machine and it comes out into the configuration, or the cross-section, the profile, as you see it in these small pieces.

He said the sticker machine is also known as a wood molding machine and that the cutting instruments are called cutter-heads. Afer the merchandise comes out of the machine, it is usually sanded and a finish put on. In some cases it is painted and in others linen is applied with glue.

Of the exhibits involved herein, exhibits 3 and 6 are painted with gold paint; exhibits 2 and 4 have had linen applied to them and are painted gray on one side; and exhibits 1, 5, and 8 have a gold edging and a coat of linen. Except for the linen and paint, these items are wood moldings, having a continuous profile throughout, of the type involved in Best Moulding Corporation v. United States (Brown, Alcantar & Brown, Inc., Party in Interest), 51 CCPA 7, C.A.D. 829, and Bailey-Mora Company, Inc., et al. v. United States, 57 Cust.Ct. 99, C.A. D. 2737. Exhibit 7 is a wood molding to which has been applied a plastic material which has been impressed with certain designs and covered with gray and gold paint. The witness described the process as follows:

This then goes through another machine that has a 10 or 12 inch roller; and there's this compo, or plastic type

material that is fed through a large hopper, much like dough, and it comes down and goes under the roller and on top of the wood, and it's quite hot. It has glues and resins in it, and when it comes out, and as it cools, it firmly adheres to the wood and becomes an integral part of the wood. And then it's finished over the top of it by paint or leafing, or whatever finish is desired on the top.

According to the witness, the merchandise is purchased by the linear foot, usually in 8-foot lengths, but sometimes in 10- or 12-foot lengths. In order to make picture frames, the pieces are cut to length, mitered, holes drilled through the miters, and glue and nails applied. Exhibit 7 is used as an outside portion. Any of the others could be used as an inside portion or could be used by itself. They are sometimes used with other moldings in making a picture frame.

Aaron Brothers sells the bulk of the merchandise to picture frame stores, furniture stores, and art galleries, made up as picture frames in stock sizes or custom made. The firm occasionally sells the merchandise in its imported condition to cabinet shops, decorators, furniture stores, and some small furniture manufacturers. The witness had seen such merchandise used for trim on doors or around doors, or as trim on medicine cabinets, mirrors, and on furniture.

Wood moldings having a continuous profile throughout have been held classifiable as lumber not further advanced than sawed, planed, and tongued and grooved, on the ground that the term "planing" includes wood moldings produced on a molding machine. Best Moulding Corporation v. United States (Brown, Alcantar & Brown, Inc., Party in Interest), supra; Bailey-Mora Company, Inc., et al. v. United States, supra. In the instant case, the moldings have had additional processes applied to them —painting, covering in part with linen, or covering with a plastic material impressed with designs and painted. The question is whether such processes constitute the merchandise wood, manufactured beyond sawing and planing, or a manufacture of wood. If the former, the merchandise is dutiable as an unenumerated manufactured article under paragraph 1558, as claimed by the plaintiff, since there is no tariff provision for wood, manufactured. C. S. Emery & Company v. United States, 41 Cust.Ct. 7, C.D. 2013. If the latter, the merchandise is properly dutiable as assessed as a manufacture wholly or in chief value of wood.

The courts have frequently made a distinction between a material manufactured and a manufacture of a material. Kleinberger & Katz v. United States, 12 Ct.Cust.App. 571, T.D. 40798; United States v. C. J. Tower & Sons, 44 CCPA 1, 7, C.A.D. 626; Chas. H. Demarest, Inc. v. United States, 44 CCPA 133, 137, C.A.D. 650; B. A. McKenzie & Co., Inc., et al. v. United States, 47 CCPA 42, C.A.D. 726; Samuel Shapiro & Co., Inc. v. United States, 20 Cust.Ct. 41, C.D. 1081.

In Kleinberger & Katz v. United States, supra, the court said:

Viewing the case at bar by the light of these decisions, it must appear the goods in question [pieces of decorated sheepskin] are not manufactures of leather. That they have been processed and subjected to manufacturing is obvious; but there may be, and often is, a clear distinction between an article which has been manufactured and a manufacture of certain material. The one phrase imports a processing operation; the other imports a completed article of commerce. As we have seen, the articles of importation in this case, although subjected to manufacturing processes, so far as the record goes, have not arrived at the stage of completed articles; they have no distinctive name or use. They have been cut to form and size for making purses and bags, but what further manufacturing processes must be used before they can be converted into purses and bags we do not know nor can we tell what other use might be made of these articles. * * *

In the *Shapiro* case, the court noted:

* * * The term "manufactures of," followed by the name of a material, frequently occurs in tariff statutes, and in many instances the name of the material, followed by the word "manufactured," also occurs in the same statute. The distinction between the two has been well-settled in that the former implies the completion of a new article of commerce, distinct from the material of which it was made, while the latter contemplates the advancement of a material which, however, still retains its identity as that material.

■ The determination of the exact point in the processing of raw material at which it becomes a partly finished article or manufacture frequently involves difficulties, and it has been held that each case must be decided on the basis of the particular facts presented. J. B. Henriques, Inc. v. United States, 46 CCPA 54, C.A.D. 695; B. A. McKenzie & Co., Inc., et al. v. United States, supra.

Plaintiff relies upon C. S. Emery & Company v. United States, supra; Clarence S. Holmes, a/c Best Products Mfg. Co. v. United States, 44 Cust.Ct. 111, C. D. 2161, appeal dismissed 48 CCPA 169; and P. W. Drittler v. United States, 52 Cust.Ct. 227, Abstract 68213. In those cases, it was held that lumber which had been sanded or edge-glued to form a single panel, had not been converted into a manufacture of lumber or wood but that it remained lumber or wood, manufactured. The goods were, therefore, held dutiable under paragraph 1558 as nonenumerated manufactured articles.

The difficulty with plaintiff's case here is that the instant merchandise does not consist solely of wood moldings to which additional manufacturing steps have been applied. To the wood moldings have been added paint, or linen, or both paint and linen, or a plastic material. In a somewhat analogous situation, it was held that merchandise, consisting. of bamboo sticks dyed and pointed, was a manufacture of bamboo. Bamboo & Rat-tan Works, Inc. v. United States, 39 CCPA 163, C.A.D. 480. The court stated (p. 165):

Appellant here seeks to have the bamboo sticks classified as apparently they would be if splitting were the only operation applied to them. There were other operations, and the resulting products, while simple, are more than mere sticks; (a) they were cut to the desired lengths, (b) their ends were sharpened, and (c) they were dyed. So, including the splitting, at least four operational steps were employed. These were manufacturing steps, all leading to, and finally resulting in, the production of finished articles of commerce wholly or partly manufactured of bamboo. Except for the dye, all the material is bamboo. The dyeing step is important in view of the intended use of the articles. The finished articles, as stated in the decision below, have a distinctive name— "stakes"—different from the material composing them, and they have "a new use, i. e., to support growing plants."

In the instant case, the additional steps of painting and/or covering with linen or plastic are important in view of the intended use of the articles. The record indicates that this merchandise is known as picture frame moldings and that the great bulk of it is used for the purpose of making picture frames. Thus the additional processing steps which have been applied after the wood came from the molding machine have not only adapted it to use as picture frame moldings but have limited its utility for other purposes.

Plaintiff relies upon Bailey-Mora Company, Inc., et al. v. United States, supra; C. S. Emery & Company v. United States, supra, and Border Brokerage Co. et al. v. United States, 52 Cust.Ct. 204, C.D. 2461, for the proposition that dedication to a single use does not require classification as a manufacture of wood.

In the *Bailey-Mora* case, it was held that dedication to a family of related uses

was not such dedication as would make a wood product a manufacture of wood. Here, however, the dedication is to one use only, the making of picture frames.

In the *Emery* case, it appeared that the merchandise had only one use, in the erection of paneled walls, but the court noted that "paneling is a recognized name for a form of lumber, rather than the name of a separate and distinct new article made from lumber, and that it is bought, sold, and used in the same manner as lumber."

In the *Boarder Brokerage* case, the court held that bullnosing, easing, and groving 1- and 2-piece pattern stock, were nothing more than a combined planing process which did not change the *per se* character of the lumber and that the commodity was merely wood material, lumber, before the operation, and that it was wood material, lumber, afterwards. It also held that while the material was designed to be used and was fit only for use in the manufacture of drawer sides, the merchandise, in its condition as imported, was not drawer sides but required further manufacturing efforts to make it such.

In United States v. C. S. Emery & Co., 18 CCPA 208, T.D. 44399, it was held that thresholds (or doorsills) and stair rails were classifiable as manufactures of wood. The former consisted of boards which had been beveled and rounded on each edge and in some manner grooved, so that there were two broad shallow grooves, running lengthwise on the under side. They were invoiced as thresholds and were ordered in certain lengths or multiples of such lengths as were desired for certain sized doors. The stair rails were ordered in the lengths desired. On the top of the rail were two concave parallel surfaces, separated by a higher convex surface. The outer edges of the concave surfaces were rounded. On the bottom of the rail, there was one large groove, running the entire length of the rail, into which fit the balusters. The court held that the items were no longer lumber dedicated to the making of some article, but that the

wood had been processed into the article itself.

 In the instant case, the merchandise consists not merely of wood which has been sawed and planed or otherwise formed into moldings, but wood and other material which have been processed into articles bought, sold, known, and used as picture frame moldings. It is, therefore, something more than wood, manufactured, and was properly classified by the collector under paragraph 412, as modified, supra, as manufactures in chief value of wood.

For the reasons stated, the protest is overruled and judgment will be entered for the defendant.

WATSON, J., concurs.