# HARTRANFT *v.* WIEGMANN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued April 20, 21, 1887. — Decided May 2, 1887.

Shells cleaned by acid, and then ground on an emery wheel, and some of them afterwards etched by acid, and all intended to be sold for ornaments, as shells, were not dutiable at 35 per cent. ad valorem, as " manufactures of shells," under Schedule M of § 2504 of the Revised Statutes, page 481, 2d edition, but were exempt from duty, as " shells of every description, not manufactured," under § 2505, page 488.

Duties are never imposed on the citizen upon vague or doubtful interpretations.

The findings of a jury, on which the Circuit Court reserved points of law, having been treated by that court, and by the counsel for both parties in it, as amounting to either a special verdict or an agreed statement of facts, this court overlooked the irregularity, on a writ of error, and considered the case on its merits.

AN action to recover back duties alleged to have been illegally exacted. Judgment for plaintiff; defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Solicitor General* for plaintiff in error.

*Mr. Frank P. Prichard* for defendants in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in a court of the state of Pennsylvania and removed into the Circuit Court of the United States for the Eastern District of Pennsylvania, by the firm of J. H. Wiegmann & Son, against the collector of customs for the District of Philadelphia, to recover moneys alleged to have been illegally exacted by him as duties on imported merchandise. After a trial before a jury, the plaintiffs had a judgment for $55.29, and the defendant has brought a writ of error. The record contains the following statement of the result of the trial:

"The jurors aforesaid, upon their oaths or affirmation aforesaid, respectively do say that they find as follows, to wit:

"Plaintiff imported into the United States from London, in December, 1881, and May, 1882, a quantity of shells, on which he paid duties June 11, 1883. Among these shells were: 37½ doz. regius murex; 8 doz. green ears; 3 doz. white ears; valued at $71.68, on which the collector imposed a discriminating duty of 10 per cent., or $7.16, as the products of a country east of the Cape of Good Hope; 12 doz. green snails; 27 doz. Lord's prayers; 12 doz. mottoes; 9 doz. Turk's caps; 3 doz. magpies; 8 doz. snails; 1 doz. trocus; 16 doz. green ears; 3 doz. white ears; valued at $125.70, on which the collector imposed a duty of 35 per cent., or $44.09, as manufactures of shells.

"The testimony in regard to these shells was as follows:

"Frederick W. Wiegmann. These shells were purchased in London. The merchants there obtain them from all parts of

the world; they are cleaned and prepared for market there; the epidermis is first cleaned off, and then the shells are ground or polished for the market; they are cleaned by acid; they are ground on an emery wheel to expose the pearly interior; the purpose of both operations is to fit the shells for market; we sell them for ornaments; we import them for the sea-shore, and sometimes we sell them for buttons, handles to penknives, &c.; there is no difference in name and use between the shells ground on the emery wheel and those not ground; the Lord's-prayer shell is sold for the same purpose; there is no new use.

"Dr. Joseph Leidy. [Regius murex shown witness.] That comes from Panama. [Green ear shown witness.] That is from the Pacific coast. [Two white ears shown witness.] One of these is from the west coast of Africa and the other from Japan. Most shells have three layers; they have the thin brown skin, the outside layer, like the common fresh-water mussel; then they have an inner layer, which is very brilliant. Very frequently the water is sufficient to wear off the skin, and they show the dull layer on the outside. By artificial means that opaque whitish layer is ground off by means of a wheel, and the inner layer is exposed, which presents that inner pearly appearance. [Samples shown witness.] These shells have had the outer layer ground off so as to exhibit the beautiful inner layer; that has been done by the application of a wheel, and afterward by polishing.

"Q. There is something here called the 'Lord's prayer.' I do not suppose you know it by that name, but please tell us about it.

"A. Well, I understand its nature. The shell happens to be of the kind which is very frequently imported and used as an ornament without any alteration whatever. The outer covering was taken off in the shape of letters, by first covering the letters with wax or grease, and then covering that with lime, having in the mean time eaten out the letters by acid or by etching. The object of taking off the epidermis is simply to show the internal beauty, for the purpose of ornament; and the object of taking off the second layer is the same, simply for the purpose of ornament

" The jury find that the regius murex, green ears, and white ears, are products of countries west of the Cape of Good Hope, as above testified, and that the discriminating duty on them amounted to $7.16, which, with interest to October 5, 1883, amounts to $7.72.

" The jury find that the green snails, Turk's caps, magpies, snails, trocus, green ears and white ears have been ground upon an emery wheel in the manner and for the purpose described in the above testimony ; that the duty collected on them as manufactures of shells amounted to $25.98, which, with interest to October 5, 1883, amounts $28.03.

" The jury also find that the Lord's prayers and mottoes have been etched with acid, in the manner and for the purpose described in the above testimony ; that the duty collected on them as manufactures of shells amounted to $18.11, which, with interest to October 5, 1883, amounts to $19.54.

### Recapitulation.

| | |
|---|---|
| Discriminating duty . . . . . . . . . . . . . | $ 7 72 |
| Duty on ground shells . . . . . . . . . . . . | 28 03 |
| Duty on etched shells . . . . . . . . . . . . | 19 54 |
| | $55 29 |

" And the court reserved the following points :

" 1. If the court should be of the opinion that both the shells ground on an emery wheel and the shells etched with acids, in the manner found by the jury, were not liable to duty as 'manufactures of shells,' but were entitled to be admitted free, as ' shells unmanufactured,' then judgment to be entered in favor of the plaintiff for fifty-five dollars and twenty-nine cents.

" 2. If the court should be of opinion that the shells etched by acids in the manner found by the jury were liable to duty as 'manufactures of shells,' but that the shells ground on an emery wheel, as found by the jury, were not so liable, then judgment to be entered in favor of the plaintiff for thirty-five dollars and seventy-five cents.

" 3. If the court should be of opinion that both the shells

ground on an emery wheel and those etched by acids were liable to duty as 'manufactures of shells,' then judgment to be entered for plaintiff for seven dollars and seventy-two cents only, being the amount of discriminating duty on shells found by the jury to have been imported from countries west of the Cape of Good Hope."

The defendant then moved for a new trial, in refusing to grant which, the court held, "that, in order to render the shells subject to duty as 'manufactures of shells' something more must be done than simply to remove the outer surface either by acids or mechanical means, and that, while the shells retained their special form and character, they could not be classified as 'manufactures of shells.'"

The finding of the jury is not in the usual form of a special verdict, but the jury make certain findings, and the statement is, that the court reserves the three points stated; and each point reserved is stated in one and the same form, namely, that if the court should be of opinion that the shells are dutiable thus and so, or are free from duty, then judgment is to be entered for the plaintiff for a specified sum. As the Circuit Court, and the counsel for both parties in that court, appear to have treated the findings and the reservation as amounting to either a special verdict or an agreed statement of facts, we are disposed to overlook the irregularity, and to consider the case on its merits. *Mumford* v. *Wardwell,* 6 Wall. 423.

It is contended, on the part of the government, that the shells were dutiable under the following provision of § 2504 of the Revised Statutes, Schedule M, p. 481, 2d ed.: "Shells, manufactures of: thirty-five per centum ad valorem."

On the other side, it is contended, that the articles were free, under the following provision of § 2505, p. 488, 2d ed., in regard to articles exempt from duty: "Shells of every description, not manufactured."

The collector levied a duty upon the shells of thirty-five per centum. The Circuit Court held that they were exempt from duty. The question is, whether cleaning off the outer layer of the shell by acid, and then grinding off the second layer by an emery wheel, so as to expose the brilliant inner

layer, is a manufacture of the shell, the object of these manipulations being simply for the purpose of ornament, and some of the shells being afterwards etched by acids, so as to produce inscriptions upon them. It appears that the shells in question were to be sold for ornaments, but that shells of these descriptions have also a use to be made into buttons and handles of penknives; and that there is no difference in name and use between the shells ground on the emery wheel and those not ground. It is contended by the government that shells prepared by the mechanical or chemical means stated in the record, for ultimate use, are shells manufactured, or manufactures of shells, within the meaning of the statute.

By the act of March 2, 1861, c. 68, § 22, 12 Stat. 192, a duty of 30 per cent. ad valorem was imposed on "manufactures of shell," and by the act of July 14, 1862, c. 163, § 13, 12 Stat. 557, that duty was increased to 35 per cent. ad valorem. By the act of July 14, 1870, c. 255, § 22, 16 Stat. 268, "shells of every description, not manufactured," were exempted from duty. These enactments were carried into the Revised Statutes.

It is stated in the brief on the part of the government that the interpretation of these provisions by the Treasury Department has not been uniform. In April, 1872, it ruled that "shells which have merely been cleaned and polished with acids cannot fairly be classified as manufactures of shells." In July, 1876, it ruled that shells engraved by the application of acids were manufactured shells. In August, 1877, it ruled, that where the manufacture of the shells consisted merely in polishing them and removing, by grinding or otherwise, a portion of the surface, the shells were exempt from duty, because their character and condition had not been materially changed, and they still preserved their identity as shells. At a later date, in regard to shells that had been cleaned by the use of the emery wheel and buffer, and shells which had been polished by the use of acids, it held that they were dutiable at the rate of 35 per centum, as manufactures of shells, on the ground that they had been advanced, by cleaning, grinding and otherwise, to a condition beyond that of crude, unmanufactured shells.

We are of opinion that the shells in question here were not manufactured, and were not manufactures of shells, within the sense of the statute imposing a duty of 35 per centum upon such manufactures, but were shells not manufactured, and fell under that designation in the free list. They were still shells. They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws. Washing and scouring wool does not make the resulting wool ɛ manufacture of wool. Cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton. In "Schedule M" of § 2504 of the Revised Statutes, p. 475, 2d ed., a duty of 30 per cent. ad valorem is imposed on "coral, cut or manufactured;" and, in § 2505, p. 484, "coral, marine, unmanufactured," is made exempt from duty. These provisions clearly imply, that, but for the special provision imposing the duty on cut coral, it would not be regarded as a manufactured article, although labor was employed in cutting it. In *Frazee* v. *Moffitt*, 20 Blatchford, 267, it was held that hay pressed in bales, ready for market, was not a manufactured article, though labor had been bestowed in cutting and drying the grass and baling the hay. In *Lawrence* v. *Allen*, 7 How. 785, it was held that india rubber shoes, made in Brazil, by simply allowing the sap of the india rubber tree to harden upon a mould, were a manufactured article, because it was capable of use in that shape as a shoe, and had been put into a new form, capable of use and designed to be used in such new form. In *United States* v. *Potts*, 5 Cranch, 284, round copper plates turned up and raised at the edges from four to five inches by the application of labor, to fit them for subsequent use in the manufacture of copper vessels, but which were still bought by the pound as copper for use in making copper vessels, were held not to be manufactured copper. In the case of *United States* v. *Wilson*, 1 Hunt's Merchants' Magazine, 167, Judge Betts held that marble which had been cut into blocks for the convenience of

transportation was not manufactured marble, but was free from duty, as being unmanufactured.

We are of opinion that the decision of the Circuit Court was correct. But, if the question were one of doubt, the doubt would be resolved in favor of the importer, " as duties are never imposed on the citizen upon vague or doubtful interpretations." *Powers* v. *Barney*, 5 Blatchford, 202; *United States* v. *Isham*, 17 Wall. 496, 504; *Gurr* v. *Scudds*, 11 Exch. 190, 191; *Adams* v. *Bancroft*, 3 Sumner, 384.

<div align="right">

*Judgment affirmed.*