In re GARDNER et al.

(Circuit Court, N. D. California. December 16, 1895.)

CUSTOMS DUTIES—CLASSIFICATION—BONES.

Bones which have been crushed and screened must be regarded as "otherwise manufactured," within the meaning of paragraph 511 of the act of 1890 (26 Stat. 604), and therefore are not admissible free of duty under that paragraph, but are subject to duty as "manufactures of bone," under paragraph 460 (26 Stat. 602).

This was an appeal by Gardner & Thornley from a decision of the board of general appraisers affirming the action of the collector of the port of San Francisco in respect to the classification for duty of certain imported bones.

J. F. Evans and Charles A. Garter, for importers.

Samuel Knight, for the United States.

McKENNA, Circuit Judge (orally). This case comes on appeal from the decision of the board of appraisers affirming the action of the collector of the port of San Francisco, assessing duty against certain bones imported by Gardner & Thornley. The case involves the construction of paragraph 460 of the tariff act of 1890 (26 Stat. 602),—"McKinley Bill," so called,—and paragraph 511 of the same act, as to whether the bones imported are of the character claimed under paragraph 460 or of the character claimed under paragraph 511. Paragraph 460 is as follows:

"Manufacturers of bone, chip, grass, horn, India rubber, palm-leaf, straw, weeds, or whalebone, or of which these substances or either of them is the component material of chief value, not specially provided for in this act, 30 per cent. ad valorem."

Paragraph 511 is:

"Bones, crude, or not burned, calcined, ground, steamed, or otherwise manufactured, and bone-dust, or animal carbon, and bone ash, fit only for fertilizing purposes, are admitted free."

Gardner & Thornley claim that the bones are of the character described in paragraph 511, and not of the character described in 460. The collector of the port assessed duty against them under paragraph 460, to which the importers protested, and took an appeal.

The testimony is quite long, and of course it is impossible to review it. It is somewhat conflicting, at least as to whether the bones are, in the first place, crude bones. But, passing that, and assuming them to be crude bones, do they fulfill the other conditions? Are they bones not burned, not calcined, not steamed, not ground, and not otherwise manufactured? The testimony is again conflicting as to whether they are "ground." The importers claim that "ground" means pulverized. I hardly think that is true. One of the definitions of grind is to crush into small fragments. But, passing this also, are not the bones otherwise manufactured, in the sense of paragraph 511? The word "manufactured" seems to be given a definition by the paragraph different from the definition in Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240. It appears to regard bones which are burned, calcined, or ground as manufactured. If so, the words "otherwise manufactured" would include those crushed and screened, and it is conceded that the bones in controversy are crushed and screened. Hence I am in the same situation that the board of appraisers were,—I am constrained, by the words of the statute, to concur with the collector.

There is one other proposition: Assuming the bones to be bone dust or animal carbon, the statute requires that they, in such con-

dition to be exempt from duty, must be fit only for fertilizing purposes. The best that may be said in favor of the claim that they are only so fit is that the evidence is conflicting. The claim is therefore not proved. But it is a fair inference from the evidence that they are fit for other purpose. The decision of the board of appraisers is therefore affirmed.