SALEMBIER & VILLATE, Inc., v. McELLI-GOTT, Acting Internal Revenue Collector.

A. P. VILLA & BROS., Inc., v. UNITED STATES.

(District Court, S. D. New York. August 16, 1926.)

1. Internal revenue ⬅️11.

Under War Revenue Act Oct. 3, 1917, §§ 500, 503 (Comp. St. §§ 6309⅛a, 6309⅛d), transportation of freight shipped from Japan to New York on through bills of lading is not subject to transfer tax imposed on freight "consigned from one point in the United States to another."

2. Constitutional law ⬅️70(1).

Courts cannot enlarge statute by implication beyond its clear embodiment, or include matters not specifically referred to.

3. Statutes ⬅️245.

In construing taxing statute, doubt as to legislative intent must be resolved in favor of taxpayer.

At Law. Two actions, one by Salembier & Villate, Inc., against Richard J. McElligott, as Acting Collector of the United States Internal Revenue, and the other by A. P. Villa & Bros., Inc., against the United States. On motions to dismiss complaint in one case, and petition in the other. Motions denied.

Lord, Day & Lord, of New York City (Franklin Grady, of New York City, of counsel), for plaintiff and petitioner.

Emory R. Buckner, U. S. Atty., of New York City (Sherwood E. Hall, of New York City, of counsel), for defendants.

HAZEL, District Judge. [1] We are concerned in these cases with motions to dismiss the amended complaint in one case and the petition in the other on the ground that insufficient facts are alleged to constitute a cause of action. It appears that merchandise consisting of bails of raw silk were imported from Japan, consigned to plaintiff and petitioner respectively at New York City, on through bills of lading; the silk on arrival at San Francisco being loaded into cars for transportation and delivery. The collector of internal revenue, acting through the carrier of the merchandise, the New York Central Railroad, pursuant to sections 500, 503, of the War Revenue Act of Oct. 3, 1917, 40 Stat. 314, 315 (Comp. St. §§ 6309⅛a, 6309⅛d), assessed a tax for the transportation from San Francisco to New York of $23.68 in the one case and $7.48 in the other. These taxes were subsequently in March, 1919, paid by the respective consignees under protest, claims thereafter being duly filed for a refund, and, on disallowance, actions were brought for their recovery within the time limited by law.

It is contended that the tax imposed was in violation of section 500 of the Revenue Act; that its imposition was discriminatory and in contravention with existing treaties with Japan. It is argued that a transfer tax could lawfully be imposed only upon transporting property or freight consigned from one point in the United States to another, and since the merchandise in question was consigned in Japan the tax was unauthorized. The validity of the assessment and collection of the tax under the circumstances depends upon the proper interpretation of the provisions of the act under which it was imposed. Section 500 (Comp. St. § 6309⅛a) reads as follows:

"Section 500. That from and after the first day of November, nineteen hundred and seventeen, there shall be levied, assessed, collected, and paid (a) a tax equivalent to three per centum of the amount paid for the transportation by rail or water or by any form of mechanical motor power when in competition with carriers by rail or water of property by freight consigned *from one point in the United States to another.*"

It is broadly contended on behalf of the collector that shipping the goods from Japan to any place in the interior of the United States does not exempt the owners from paying the specified tax. I have reached a different conclusion. The words "consigned from one point of the United States to another" I believe to be words of limitation, and the inclusion therein of reloading the goods into railroad cars under through bills of lading—goods that were not reconsigned—would, in my judgment, give no point to the language of the act. No wording is contained therein warranting the inference that Congress intended to impose a transportation tax on merchandise originated in a for-

eign country and which was consigned on a continuous carriage to its destination in the interior of this country. The term "consigned," as used in the act, must be given its ordinary meaning, and reading into the statute the words "consigned from points outside of the United States to a point within" would violate its plain import. United States v. Eighty Seven Barrels, etc. (D. C.) 180 F. 215. If this constitutes a narrow definition, the obvious answer is that Congress used a narrow term, and, since the word "consigned" is not defined in the act, the consignees are to be regarded as residing at the place where the goods were to be delivered on their arrival. 12 Corpus Juris, p. 528.

[2,3] It is not within the province of this court to enlarge the statute by implication beyond its clear embodiment (Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211, or to include matters to which no specific reference is made, and moreover, when there is a doubt as to the intention of Congress, it is the duty of the court to resolve the doubt in favor of the citizen (Hartranft v. Wiegmann, 121 U. S. 609, 7 S. Ct. 1240, 30 L. Ed. 1012). The conclusion reached finds support to my mind in the subsequent legislation enacted by Congress in relation to foreign transportations which presumably resulted from conflicting interpretations. It is shown that, shortly after the quoted provision under which the tax was imposed became of force, the Commissioner promulgated a regulation substantially stating that under its provisions no transportation tax would be imposed on merchandise consigned under a through billing from a foreign country to a point in the United States, unless there was a reconsignment.

This regulation, however, was altered in March, 1918, authorizing tax exaction on a foreign importation and continuous shipment to an interior destination in the United States, except shipments from Canada or Mexico. On April 1, 1919, following the imposition of the tax in controversy, Act Feb. 24, 1919, c. 18, 40 Stat. 1101, became effective, wherein in plain terms was authorized a tax on freight carried from a point without the United States to a point within. It seems to me this enactment recognized the indefiniteness of section 500 as to imported goods destined on a through billing to points within the United States. The plea that, if consignments such as here considered, are free of the tax, it would result in discrimination in favor of foreign shippers, cannot be given controlling consideration. At most, it raises a doubt as to the construction, and the rule therefore obtains of construing the provision against the government and in favor of the importers. Bailey v. Clark, 21 Wall. 288, 22 L. Ed. 651; Monroe Cider Co. v. Riordan (C. C. A.) 280 F. 624.

The other grounds presented in opposition to the motion, namely, discrimination against the importers and violation of treaties existing between the United States and Japan may be passed without decision.

The motion to dismiss in each case is denied.