Common Pleas Court of Franklin County.

FRANKLIN-AMERICAN LAUNDRY & DRY CLEANING CO. V.
TAX COMMISSION OF OHIO.

Decided October 6, 1932.

*Taylor, Bues & Grabiel,* for plaintiff in error.

*Gilbert Bettman,* Atty. Gen'l., *William J. Ford,* Ass't.
Atty. Gen'l., for defendants in error.

LEACH, J.

This action is brought into this court on petition in
error under favor of Sections 5611-1 and 5611-2 of the
General Code of Ohio from an order of the State Tax
Commission dismissing the appeal of the plaintiff from
the assessment of the Tax Commission of plaintiff's per-
sonal property in Franklin county, Ohio.

The business of the plaintiff is that of a laundry and
dry cleaning company, and by its order the Tax Com-
mission refused to list the personal property of the
plaintiff as that of "a person who purchases, receives or
holds personal property, of any description, for the pur-
pose of adding to the value thereof by manufacturing, re-
fining, rectifying, or by the combination of different
materials with a view of making a gain or profit by so
doing;" Section 5385, General Code, classifying persons
who purchase, receive or hold property for such purposes
as a manufacturer.

Section 5388, General Code provides that:

"Excepting as herein otherwise provided, personal prop-
erty shall be listed and assessed at seventy per centum of
the true value thereof in money,  *  *  *  *"

One of the exceptions being:

"All engines, machinery, tools and implements of a manufacturer mentioned in Section 5386 of the General Code, and all engines and machinery of every description used, or designed to be used in mining, and all tools and implements of every kind used, or designed to be used for such purpose, excepting as provided in the last paragraph of this section, and all engines, machinery, tools, implements and domestic animals used in agriculture;" shall be listed and assessed at fifty per centum of the true value in money.

The question therefore is whether machinery, etc., used in a laundry and dry cleaning establishment should be taxed at fifty per centum or at seventy per centum.

Various cases and authorities defining a manufacturer have been cited in briefs, and in general these definitions do not materially vary.

For example, in *Com.* v. *Light & Power Co.*, 145 Pa. St. 109, the court recites in the opinion the definition of manufacture as given in Brand's Encyclopedia, as follows:

"The term employed to designate the changes or modifications made by art or industry in the form of substance of material articles, in the view of rendering them capable of satisfying some want or desire of man; and the manufacturing industry consists in the application of art, science or labor to bring about certain changes or modifications of already existing materials."

Another definition is found in *Anheuser-Busch Asso.* v. *United States*, 207 U. S. at page 556-562.

"Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary, as set forth and illustrated in *Hartranft* v. *Wiegmann*, 121 U. S. 609. There must be transformation; a new and different article must emerge 'having a distinctive name, character or use.' "

The court has no difficulty in reaching the conclusion that the business carried on by the plaintiff, which is that of laundering and dry cleaning, and which includes pressing, etc., can not properly be classified as manufacturing. However, a manufacturer, as that term is defined in Section 5385, General Code, includes "refining, rectifying, or by the combination of different materials with the view of making a gain or profit by so doing."

Does this broaden the general understanding of the term "manufacturer," and if so, to what extent?

As was said in *State ex rel.* v. *Bish,* 12 N. P. (N. S.) 369:

"In the construction of statutes, words and phrases are to be taken in their plain, ordinary and usual sense, unless they are technical words and phrases, in which case they are to be construed according to their technical meaning."

And again, with reference to the construction of statutes, we note that in *Slingluff* v. *Weaver,* 66 O. S. 621, it was said that:

"The question is not what did the general assembly intend to enact but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

We have carefully noted the definitions cited in the briefs of the words "rectify" and "refine." The clearest definition of these terms which the court has been able to find, however, from a decided case will be found in *Mayes* v. *Paul Jones & Co.,* 270 Fed. 121, 131. It was there held:

" 'Purifying' or 'refining,' as used in Act Oct. 3, 1917, S. 304 (Comp. St. S. 5986c), relative to distilled spirits, means the removal, chemical change, or modification of objectionable soluble matter, held in solution in the spirits, united therewith, and *forming a constituent and integral part thereof,* so that its removal, chemical change, or modification will change or alter in some degree, at least, the character or quality of the entire volume of spirits. The use of a filter which merely removes particles of charcoal and other extraneous substances from distilled spirits, and does not change the constituent elements in any respect whatever, is not 'rectification,' 'purifying,' or 'refining,' within Act Oct. 3, 1917, S. 304 (Comp. St. S. 5986c), imposing a tax on distilled spirits rectified, purified, or refined.' "

Now in the process of cleaning or laundering it is not intended that the process shall remove or chemically change any constituent or integral part of the clothing, goods or material so laundered or cleaned.

It will be noted that in the case cited extraneous substances were removed from the spirits, just as extraneous

substances are removed from the clothing, goods or materials laundered or cleaned; and the court held that since there was no change in the constituent elements that such removal did not constitute either rectification, purifying or refining within the meaning of the Act.

While the question may not be free from doubt, the court is inclined to the opinion that to hold laundering, cleaning, pressing, etc., as either manufacturing, rectifying or refining would be to place a strained and unnatural construction upon the statutory definition.

Modern automobile launderies or washing establishments maintain more or less machinery which is used in removing extraneous matter from automobiles, but could it be said that the washing or cleaning of an automobile by such methods could properly be classed either as manufacturing, refining or rectifying? No one ever thinks of using any one of these terms in such a connection. Many instances of similar character might be cited. Shoe cleaning and polishing establishments are common, but no one ever thinks of referring to the process of cleaning shoes as having any connection with manufacturing, refining or rectifying. To do so would be to give these terms a strained and unnatural meaning.

The fact that the State of Pennsylvania has placed launderies and manufacturing establishments in the same class for taxation purposes as referred to in the brief would seem rather to reinforce the conclusion here reached, because that State evidently found it necessary to specifically and by that name include launderies with manufacturing establishments. So also the State of New York. Had the word manufacturing included launderies it would not have been necessary specifically to add the words referring to launderies.

This conclusion is also perhaps reinforced by the fact that Section 5385, General Code, which defines manufacturing, has been a part of the statutory law of this State for a good many years, and there is no judicial record of any laundry or dry cleaning establishment ever having made the contention that it was a manufacturer for purposes of taxation under that law and under that definition. Of course, there may have been no particular incentive so to do, but it can scarcely be said that this language as

used in the re-enacted section has any different meaning from the same language used in the old section. It is scarcely the province of the court to determine whether proper public policy in this State should or should not classify the personal property used in the laundry and dry cleaning business in the one class or in the other.

There may be no particular reason why machinery, used in the laundry business should be taxed on the basis of 70% of its true value in money, while machinery of somewhat similar character used in the manufacturing business should be taxed at 50% of its true value, but the classification amendment gave to the General Assembly broad powers in this connection, and we think if a mistake has been made in the classifications so adopted the remedy should lie with the legislative rather than the judicial branch of the government.

It is urged that if the statute is to be construed as heretofore indicated it results in discrimination, and is unconstitutional. We are not in agreement with this contention. The very purpose of the constitutional amendment as was heretofore pointed out was to permit classification.

It was held in the case of *Bell's Gap Railroad Company* v. *Pennsylvania*, 134 U. S. 232, at page 237, as follows:

"The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State legislature, or the people of the State in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of

our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation."

The order of the Tax Commission is affirmed.