(C. D. 1767)

WESTCHESTER AQUARIUM SUPPLY CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 15, 1956)

*John D. Rode* for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Joseph E. Weil* and *William J. Vitale*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON. Judge: The merchandise the subject of this protest is described on the invoices as "Aquafern," which is apparently a proprietary or trade name. It was assessed with duty at the rate of 25 per centum ad valorem by similitude, under paragraph 1559 of the Tariff Act of 1930, to manufactures of sea grass, or of which sea grass is the component material of chief value, provided for in paragraph 1537 (a) of the Tariff Act of 1930.

Plaintiff denies (a) that the merchandise, as imported, has the status of a "manufacture" and (b) that it bears a similitude, within the meaning of paragraph 1559, *supra*, to the manufactures of sea grass, etc., provided for in paragraph 1537 (a), *supra*, and, as its chief claim, calls for classification under the catchall clause in paragraph 1558 of the said act, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for nonenumerated unmanufactured articles, with duty assessment at 5 per centum ad valorem.

Alternatively, if the merchandise be held to have a similitude to sea grass, plaintiff claims it is properly classifiable under the provision in paragraph 1540 of the said act, as modified by the said proclamation, for "* * * sea grass, * * * if manufactured or dyed," with assessment of duty at 5 per centum ad valorem. Other claims made in the protest, while not pressed, were specifically not abandoned.

Two samples of the merchandise are before us as collective exhibit 1. They have the appearance of small bunches of dried plant matter,

one colored red and the other green, each bound around the stem ends by a small lead clip. The evidence establishes, strangely enough, that what looks like plant matter actually consists of dried marine animals, *sertularia cuperssenia*. It also establishes that, as imported, the merchandise is dyed; that its sole use is to be placed in aquariums for decorative purposes; and that the lead clip serves not only the purpose of binding the strands together, but also to keep the article upright at the bottom of the aquarium.

With respect to sea grass, plaintiff established that sea grass is also used in aquariums and that one of the purposes of its being placed there is for decorative purposes. Plaintiff established, however, that the primary purpose of placing sea grass in aquariums is to supply food to the fish and to keep the aquarium in balance by using up the waste material in the water and producing oxygen. We think it is clear that, save in the single element of use for decorative purposes, plaintiff established a lack of similitude between the instant merchandise and sea grass as to all of the other statutory criteria, that is to say, as to material, quality, and texture.

However, it seems to be clear that what is used in aquariums which may bear a similitude to the instant merchandise is not *manufactures of* sea grass, or manufactures of which sea grass is the component material of chief value, or even sea grass, *manufactured or dyed*, but is the material, sea grass, in its natural, living state. Sea grass in such state is not an "article enumerated in this Act as chargeable with duty," and, consequently, the similitude clause can have no application thereto. It follows that the collector's classification of the merchandise by similitude to manufactures of sea grass or manufactures of which sea grass is the component material of chief value was erroneous.

As the merchandise involved does not appear to be enumerated in the tariff act, either directly or by similitude, it would appear to take classification under the catchall provisions of paragraph 1558 for nonenumerated manufactured or unmanufactured articles. Plaintiff claims that the merchandise was not manufactured in the sense that the term is used in tariff provisions, citing the well-known series of cases running back to *Hartranft* v. *Wiegmann*, 121 U. S. 609. Those cases, however, relate to situations wherein processes necessary to bring crude materials into a marketable state were held not to be such as would remove them from a tariff category of crude or unmanufactured.

The processes shown to have been performed upon the dried marine material here, viz, dyeing and fastening into bunches with a lead clip, we think were processes of advancement which amounted to manufacturing operations. Neither operation was necessary in order to get the original crude material by itself from its state, as found in

nature, but they were operations obviously performed with the application of labor and materials tending to advance the original material in condition, and, presumably, in value and to prepare it for its final use. Whether they were such operations as resulted in a manufactured material or in the creation of a new article with a new name, use, or character we need not here decide, inasmuch as the original material was thereby removed from the category of unmanufactured articles and must, in either case, take classification under the nonenumerated manufactured articles provision in paragraph 1558, taking duty at the rate of 20 per centum ad valorem.

That claim, although not pressed, was made in the protest, and, to that extent, the protest is sustained, and judgment will issue accordingly.