262 So.2d 297

**STATE of Alabama, DEPARTMENT OF REVENUE**

v.

**CONSUMERS BAGGING COMPANY, Inc., a Corp.**

**8 Div. 50.**

Court of Civil Appeals of Alabama.

Dec. 15, 1971.

Rehearing Denied March 1, 1972.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, and Asst. Atty. Gen., Herbert I. Burson, Jr., Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for the State.

Harold V. Hughston, Tuscumbia, for appellee.

BRADLEY, Judge.

■ The issue for decision by this court is whether bagging and ties used by cotton ginners to wrap and bind deseeded cotton are subject to the State's sales tax law.

The appellee manufactured and sold bagging and ties to operators of cotton gins to be used in packaging cotton after it had been deseeded, cleaned and compressed into a bale of about 500 pounds.

As the evidence showed, the purpose of ginning cotton is to put the cotton into a marketable form. This is done when the cotton is "ginned" and packaged. Placing "ginned" cotton in a container composed of bagging and ties is the industry-accepted means of packaging the cotton.

Although the bale of cotton may pass through many hands from the farmer to the textile mill, the wrapping stays on the bale until it is removed and discarded by the textile mill operators.

The evidence also showed that the farmer engages the ginner to process and package his cotton for a price. The ginner performs a service for the farmer by processing and packaging the cotton, and, in return, he gets paid for this service.

Sometimes, as in the instant case, the ginner will itemize the cost of the service so as to show an amount for processing and an amount for packaging; whereas in other instances the ginner will just show a lump-sum as the charge for the service rendered to the farmer.

After the cotton is baled it is ready for market. The evidence indicated that this is the only acceptable marketable form for cotton, and it could not be satisfactorily transported unless put in this form.

When the cotton is sold after being baled, it is sold as a package, there being no separation of cotton from bagging and ties so far as price is concerned.

The appellant, State Department of Revenue, assessed appellee, Consumers Bagging Company, Inc., for retail sales tax for the period October 1, 1959 through April 30, 1961. The amount of the final assessment including penalty and interest amounted to $12,330.78.

On May 26, 1962 the appellee appealed the final assessment to the Circuit Court of Colbert County for a review of it. The appellee filed a bill of complaint and appellant answered it.

The case was tried by the Circuit Court, sitting without a jury, on September 24, 1962, and on January 15, 1971 a final decree was rendered declaring the final assessment to be invalid. From that decree the appellant appeals to this court.

The effect of the decree of the trial court was to say that the sales of bagging and ties made by the appellee to the various ginners were not retail sales, and therefore were not subject to sales tax.

Title 51, Section 786(2) (j), Code of Alabama 1940, as Recompiled 1958, provides that a retail sale is a sale of tangible personal property except where such sale is deemed to be a wholesale sale. It is also provided that sales of tangible personal property to manufacturers or compounders, among others named not here pertinent, which is to be used in manufacturing or compounding but not to become an ingredient or component part of the manufactured item is a retail sale.

In Title 51, Section 786(2) (i), Code of Alabama 1940, as Recompiled 1958, a wholesale sale is defined as follows:

"The term 'wholesale sale' or 'sale at wholesale' means a sale of tangible personal property by wholesaler to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale. The term 'wholesale sale' shall include a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters into and becomes an ingredient or component part

of the tangible personal property or products which he manufactures or compounds for sale, and the furnished container and label thereof. The term 'wholesale sale' or 'sale at wholesale' shall also include a sale of containers intended for one-time use only, and the labels thereof, when such containers are sold without contents to persons who sell or furnish such containers along with the contents placed therein for sale by such persons."

It is argued, and we agree, that if the sale of bagging and ties by appellee to the cotton ginners is not a wholesale sale, it must be a retail sale and therefore subject to the sales tax.

The definition of a wholesale sale is divided into three categories, and we must decide whether or not the sales in question will fit into any of these three categories. They must do so in order to be exempt from sales tax.

The first category provides that a sale is at wholesale if made to ". . . licensed retail merchants, jobbers, dealers, or other wholesalers for resale . . . ." Such definition does not include a sale made to users or consumers if not for resale.

The evidence showed that appellee did not have a sales tax number, and appellant urges that our conclusion from this piece of evidence should be that appellee was not selling tangible personal property at retail.

The evidence does show that the only ones who bought and sold bagging and ties were the appellee and the ginners. The farmer did not buy bagging and ties; he bought a service. Of what use would bagging and ties be to a farmer unless he had a gin? For all practical purposes they would be useless to him. To the farmer, bagging and ties are only useful when they are wrapped around ginned cotton. This enables him to store the cotton in a smaller space, to transport it easily, and to sell it to a buyer.

Bagging and ties are not being sold by the ginner to the farmer as a resale; they are being sold to the farmer as a part of a service.

The ginner is the ultimate consumer of the bagging and ties. He uses this package to contain the processed cotton.

The holding in City Paper Co. v. Long, 235 Ala. 652, 180 So. 324, gives support to our conclusion. The Supreme Court said in that case:

" . . . it is clear beyond a shadow of doubt that the commodities which complainants sell, as alleged in the bill, are not sold for resale, and are not in fact sold by the retailers to their customers. Such wrappings and cartons are used by the retailer for the purpose for which they were intended, and when delivered by the retailer to their customers become waste, and the fact that the cost to the retailer is figured into the composite price and delivered with the articles of specified personal property inclosed or wrapped therein is wholly immaterial. These are used, and, for all practical purposes, consumed by the retailer and jobber as an incident to their business, and the cost to them is figured in as a part of the overhead expense of the business."

We therefore conclude that appellee did not meet the requirements of the first category of a wholesale sale.

We come now to the second category of a wholesale sale.

This aspect of the definition of a wholesale sale provides that the property sold to a manufacturer or compounder must enter into and become an ingredient or component part of the manufactured or compounded product in order to be exempt from sales tax.

First off, can we say that ginning cotton is a manufacturing process or a compounding process? In answer to this question, we think it clear that ginning cotton is not a "compounding" process.

In Webster's New International Dictionary, Third Edition, we find the following definition of "compounding":

"1(a): composed of or produced by the union of several elements, ingredients, parts or things . . . "

Saying that ginning cotton is not a manufacturing process is not as easy as saying that ginning cotton is not a compounding process.

We have been cited to the case of City of Memphis v. St. Louis & S. F. R. Co., 6 Cir., 183 F. 529, which holds that baling cotton is manufacturing.

We find it very difficult to give much credence to this case in view of our conception of what takes place in the ginning process.

All that is done in the ginning process is to take the cotton after it comes from the fields, clean it, remove the seed and package it in a container that is acceptable by the industry. The cotton is still cotton. It has not been treated, changed or altered, except for the removal of the seeds and debris.

The Supreme Court of the United States, in Anheuser-Busch Brewing Ass'n v. United States, 207 U.S. 556, 28 S.Ct. 204, 52 L.Ed. 336, very succinctly expresses our definition of "manufacturing." In that case the Supreme Court had before it a case involving imported corks which were to be used in bottling beer to be exported to foreign countries.

The statute being construed provided that imported materials on which duties had been paid that were to be used in the manufacture of articles which would later be exported would be allowed a credit for duties paid on import.

The imported articles were corks to be used in bottling beer which was to be exported.

These corks were cleaned, steam washed, and coated with a chemical substance to prevent the escape of carbonic gases from the fermented beer.

The contention was that the corks after the treatment received would be considered articles manufactured and come within the meaning of the rebate statute.

The Supreme Court said:

". . . Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary, as set forth and illustrated in Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012. There must be transformation; a new and different article must emerge, 'having a distinctive name, character, or use.' This cannot be said of the corks in question. A cork put through the claimant's process is still a cork. The process is the preparation of the encasement of the beer . . . . "

In the case at bar the process of ginning and wrapping the cotton with bagging and ties did not transform the cotton into a new and different article. The cotton was still cotton; albeit it was now without the seed and debris and was encased in a serviceable wrapping.

Therefore, we do not believe that the bagging and ties were used in "manufacturing" as that term is defined in the second category of Section 786(2) (i), supra, and the sale thereof was not a wholesale sale.

The third category of a wholesale sale provides that containers intended for one-time use only, sold without content to persons who sell or furnish such containers with contents for sale by said persons is intended to be a wholesale sale and not subject to sales tax.

We agree that the bagging and ties are for a one-time use only. The bagging and ties are placed around the cotton at the gin and remain there until the cotton reaches the textile mill which is the ultimate consumer of the cotton. The bagging and ties are at that point discarded, for they have served their purpose.

However, the ginner did not in this case, and as the evidence showed, the ginner usually does not, own the cotton and does not resell it. He merely performs a service for the owner of the cotton who is the farmer. Hence, the containers, i. e., the bagging and ties, and their contents, i. e., the cotton, were not sold by the ginner to a purchaser. Instead, the ginner used the bagging and ties to encase the processed cotton. The ginner used the bagging and ties in its preparation of the cotton for the farmer to store or sell. We can then say with reasonable certainty that the ginner was the ultimate consumer of the bagging and ties, for he used these materials in processing the cotton.

In City Paper Co. v. Long, supra, the Supreme Court said that the cartons and wrappings used to package articles sold by the retailer were not sold by the retailer to its customers even though the cost of them is included in the price of the article sold, and it is not a resale of the carton and wrappings, but is used or consumed as an incident to the retailer's business.

In the case at bar a similar analogy is readily apparent. The ginner does not buy the bagging and ties for resale, for there is no one to purchase bagging and ties, but he does buy the bagging and ties to be used or consumed in his business of processing cotton for the farmer. And the fee charged for this service includes the bagging and ties as a part of his overhead expense.

We are therefore constrained to hold that appellee falls outside the third category of a wholesale sale.

█ The sale of bagging and ties by the appellee not being in the category of a wholesale sale, it is a retail sale, and therefore subject to the State's sales tax law, i. e., Title 51, Section 786(3), Code of Alabama 1940, as Recompiled 1958, and as amended. We would also observe that this conclusion is supported by the long-standing administrative interpretation of such an assessment by the Commissioner of the State Department of Revenue. It is well known that where such a construction has stood unchallenged for a lengthy period of time, such fact is to be given favorable consideration by the courts. East Brewton Materials, Inc. v. State, Dept. of Revenue, 45 Ala.App. 584, 233 So.2d 751.

For the error committed by the trial court, this case is reversed and remanded to said court for the entry of a decree adjudging the final assessment for sales tax made by the State Department of Revenue against the appellee to be valid.

Reversed and remanded with directions.

## ON REHEARING

In its application for rehearing appellee asserts that this court made findings of fact contrary to those made by the trial court in its final decree. A reexamination of the trial court's decree reveals no findings of fact, only a recitation of how the matter got to court and the basis for its being there, along with its order that the final assessment of sales tax against appellee was not authorized by the statute, i. e., Title 51, Section 786(2) (j) and (i), Code of Alabama 1940, as Recompiled 1958.

█ It is the rule in Alabama that the presumptions that attend the equity court's findings on the facts do not apply where the question of the equity court's application of the law to the facts is involved. Pruitt v. Key, 281 Ala. 443, 203 So.2d 450.

Although not specifically stating it, we inferentially held that the trial court had misapplied the law to the facts by specifically deciding that the sale of the bagging and ties to the ginner was a retail sale and therefore subject to the sales tax law. We are still of the opinion that the trial court misapplied the law to the facts in this case.

Opinion extended.

Application for rehearing overruled.