## UNITED STATES v. ARMATURE EXCHANGE, Inc.

No. 9469.

Circuit Court of Appeals, Ninth Circuit.

Jan. 17, 1941.

Rehearing Denied Feb. 18, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Norman D. Keller, Geo. H. Zeutzius, and Carl Pergler, Sp. Assts. to Atty. Gen., and Ben Harrison, U. S. Atty., and E. H. Mitchell and Armond Monroe Jewell, Asst. U. S. Attys., all of Los Angeles, Cal., for appellant.

Darius F. Johnson, of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Suit by appellee taxpayer against the United States for recovery of $1,452.30 assessed and paid as manufacturer's excise taxes on sales of armatures. From a judgment of the District Court in favor of the taxpayer [28 F.Supp. 10, 14], the United States appeals. For clarity in this opinion we shall refer to the appellant United States of America as the Government, and to the appellee as taxpayer.

The taxes in question were assessed against the taxpayer by virtue of Section 606 (c) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 609, 610, which provides, so far as here applicable,

"§ 606. Tax on Automobiles, Etc.

"There is hereby imposed upon the following articles· sold by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold: * * *

"(c) Parts or accessories (other than tires and inner tubes) for any of the articles enumerated in subsection (a) or (b), 2 per centum. * * *"

[Note—Subsections (a) and (b) referred to enumerate automobiles, automobile trucks and motorcycles.]

It is not denied that the taxpayer sold the armatures in question, nor is it denied that the armatures constitute automobile parts or accessories. The sole question involved in this appeal is whether or not the sales are taxable to taxpayer as the manufacturer or producer thereof, within the meaning of the Act.

Taxpayer was incorporated under the laws of California "to carry on the business of manufacturing and assembling armatures, motors and electrical equipment of any and all kinds. To design and prepare plans and specifications for the manufacture, construction and assembling of electrical appliances and equipment. To enter into contracts and make the necessary agreements for marketing and disposing of the same. * * *"

Taxpayer acquires burned and worn out armatures, strips them to the core, and by various machine and hand operations,

through the use of the old core and new material, turns out for the general market "Rebuilt Armatures". The method of taxpayer's operations is fully described in the opinion of the Judge who tried the case, supra, and it need not be repeated here. Each article is stamped with the taxpayer's trade name "Armex" and is separately boxed and labelled "Armex Rebuilt Armature. 'A Quality Product'. Armex Code (giving number)." About 80 armatures are turned out, checked, boxed and put on the taxpayer's shelves daily. It maintains a stock for sale of 600 different types of armatures, each with taxpayer's own stock number.

It is the contention of the taxpayer, and in this it is supported by the conclusion of the trial court, that its business is simply that of reconstructing and restoring armatures, as contrasted to that of manufacturing or producing armatures.

The trial court's conclusion that the rebuilt armatures were not "manufactured or produced" by the taxpayer is premised upon the assumption that there must be a "new and different article" at the completion of the taxpayer's operations. Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012 and Anheuser-Busch Ass'n v. United States, 207 U.S. 556, 28 S.Ct. 204, 52 L.Ed. 336, are cited as authority for this proposition.

The Hartranft case [121 U.S. 609, 7 S. Ct. 1243, 30 L.Ed. 1012] arose under the provisions of §§ 2504 and 2505 of the Revised Statutes. By § 2504 "manufactures of shells" were dutiable. Under the provisions of § 2505 "shells of every description, not manufactured" were exempt from duty. The taxpayer there involved had imported shells which had been cleaned with acid and ground on an emery wheel. Some of them were etched with acid. All were intended to be sold for ornaments, as shells. It was held that the cleaned and polished shells were not "manufactures" of shells, as they had not been manufactured into a new and different article.

The Anheuser-Busch Brewing Ass'n case arose under § 25 of the Tariff Act of October 1, 1890, 26 Stat. 567, 617, which provided for a rebate on exported manufactured articles. The taxpayer exported beer in corked bottles. The corks had been brought from Spain, and then treated to make them usable. It was held by the Supreme Court that the corks had not been "manufactured" here. The Court cited the Hartranft case, supra, with approval, and held that in order to constitute a "manufacture" "there must be transformation; a new and different article must emerge, 'having a distinctive name, character, or use.'" 207 U.S. at page 562, 28 S.Ct. at page 207, 52 L.Ed. 336.

In our opinion neither of the cited cases is authority for the position of the taxpayer that it is not a "manufacturer or producer" of armatures. In both cases the raw materials were not subject to the terms of the statute involved, the statutes relating solely to "manufactures". Certainly in such statutes there must be a "transformation".

De Jonge v. Magone, 159 U.S. 562, 16 S.Ct. 119, 40 L.Ed. 260, cited by the taxpayer in its brief, is in the same category. It also arose under the tariff act, 22 Stat. 488, 510, which imposed a duty of 15% on "paper, manufactures of, or of which paper is a component material", and a duty of 25% on "all other paper not specially enumerated or provided for". The question was whether the taxpayer was subject to 15% or 25% duty. The paper involved had been treated to make a higher and better grade of paper. There was no change of form, and the Court therefore held that the 25% duty applied.

Other cases relied on by the taxpayer are those arising under the patent laws. American Fruit Growers, Inc. v. Brogdex, 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801; Goodyear Shoe Machinery Co. v. Jackson, 1 Cir., 1901, 112 F. 146, 55 L.R.A. 692; Foglesong Mach. Co. v. J. D. Randall Co., 6 Cir., 1917, 239 F. 893; Ely Norris Safe Co. v. Mosler Safe Co., 2 Cir., 1933, 62 F.2d 524; and Hess-Bright Mfg. Co. v. Bearings Co., D.C.Pa.1921, 271 F. 350.

The American Fruit Growers case involved the question of whether certain claims of a patent described an article of manufacture within the meaning of 35 U. S.C.A. § 31. The product attempted to be patented was orange rind treated to make it resistent to blue mold decay. There the Court properly held that the treated rind was not a "manufactured article".

The other patent cases cited above involved the question of what repairs may be made by a purchaser of a patent article without constituting infringement. They all turn on the extent of the license granted to the purchaser of a patented combination, and are not authority in the instant case. See American Cotton-Tie Co. v.

Simmons, 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79; Miller Hatcheries Inc. v. Buckeye Incubator Co., 8 Cir., 1930, 41 F.2d 619.

 We cannot find any justification for reading into the statute involved here, as taxpayer would have us do, the qualification that the articles "manufactured or produced" must have been so manufactured or produced entirely from new or virgin raw materials. We recognize the rule of construction that the literal meaning of words can be insisted on in resistence to a taxing statute, but as stated by the Supreme Court in Carbon Steel v. Lewellyn, 251 U. S. 501, 505, 40 S.Ct. 283, 284, 64 L.Ed. 375, " * * * it [the rule of literal construction] cannot be carried to reduce the statute to empty declarations. * * * "

The Government contends, and we think correctly, that the discarded armatures purchased by the taxpayer, having lost their function as a useful article as well as their commercial value as such, when acquired for use in the manufacturing and production of an article of commerce, bear the same relation to the completed armature as the purchase of unused materials would bear to the completed article. See Cadwalader v. Jessup & Moore Paper Co., 149 U.S. 350, 13 S.Ct. 875, 37 L.Ed. 764. The article resulting from the use of the discarded core with new materials, and through the employment of skill, labor and machinery, is, as it seems to us, a manufactured and produced article of commerce. Such an article produced in quantities under a trade name and placed in stock for future sale must be classified as a manufactured or produced article. It is our opinion and we hold that these operations constituted "manufacture or or production" within the meaning of the statute involved. See opinion in Clawson & Bals, Inc. v. Harrison, 7 Cir., 108 F.2d 991.

In addition to the above, if more were needed, Treasury Regulations 46, Article 4, approved June 18, 1932, regulating taxation of automobile accessories under § 606(c) of the Revenue Act of 1932, provides: "Art. 4. Who is a manufacturer or producer.—As used in the Act, the term 'producer' includes a person who * * * produces a taxable article by combining or assembling two or more articles."

This provision has appeared in the Treasury Regulations since 1920, during which time the statute taxing manufacturers and producers of automobile accessories

has been reenacted, without change material to this cause, several times. "Under the established rule Congress must be taken to have approved the administrative construction and thereby to have given it the force of law." Helvering v. Reynolds Tobacco Co., 306 U.S. 110, 115, 59 S.Ct. 423, 426, 83 L.Ed. 536.

It is certain that had the taxpayer in its operations purchased new cores and combined these cores with the other materials needed, it would have "manufactured or produced" armatures within the terms of the Statute and Regulations. See Klepper v. Carter, 9 Cir., 286 F. 370, 371. There can be no possible difference where the taxpayer utilizes used cores, which have been discarded and are out of circulation, to combine with new essential materials constituting a substantial and material portion of the completed product.

Reversed.

DENMAN, Circuit Judge, concurs in the result.