UNITED STATES v. J. LESLIE MORRIS CO., Inc.

No. 9746.

Circuit Court of Appeals, Ninth Circuit.

Dec. 15, 1941.

Rehearing Denied Jan. 20, 1942.

See, also, 9 Cir., 124 F.2d 373.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and George H. Zeutzius, Sp. Assts. to Atty. Gen., and Wm. Fleet Palmer, U. S. Atty., and E. H. Mitchell and Armond Monroe Jewell, Asst. U. S. Attys., all of Los Angeles, Cal., for appellant.

Darius F. Johnson and Merserve, Mumper & Hughes, all of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal by the government from a judgment for the refund of excise taxes. It involves the question whether sales of automobile connecting rods were taxable under § 606(c) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Code, § 3403. (c), imposing a tax upon automobile parts "sold by the manufacturer, producer, or importer" thereof.

The taxpayer was incorporated to "operate a business for the manufacture, sale and distribution of automotive and industrial bearing metals and products". During the taxable period it was engaged in re-babbiting and otherwise processing, and selling, used or worn out automobile connecting rods under the trade name "Moroloy". It owned plants in various cities from New York to Los Angeles and was affiliated with other plants throughout the United States and Canada. Automobile wrecking brokers and jobbers were the chief source of supply for the used rods, and the sales —made on what is described as the exchange basis—were to wholesalers or jobbers, ultimately for replacement purposes in the repair of automobiles.

A connecting rod is a forging by means of which the automobile piston is connected with the crankshaft. It has a bearing at either end, the lower or crankshaft bearing being the babbit bearing. At the upper, or wristpin, end there was in at least half the rods handled by the taxpayer a bronze bushing which serves as the bearing. The reconditioning of discarded connecting rods through replacement of the bearings has become an extensive and

highly specialized industry.[1] The mechanics of the process—apparently not differing greatly among the several concerns engaged in the business—is described in the opinion in Clawson & Bals v. Harrison, 7 Cir., 108 F.2d 991, 994, and need not again be stated. The process involves the use both of old and new materials, the new materials purchased and used being babbit metal, shims, bronze bushings, nuts and bolts.

Taxpayer's finished product is guaranteed against defective workmanship and material. Each rod, after the process of reconditioning is complete, is put in a cardboard carton and placed in the stock room. Each carton bears at one end a stock number and taxpayer's trade name, "Moroloy", the stock number conforming to taxpayer's printed price sheets and catalogues. The carton label includes also a picture of a connecting rod and the legends "Rebabbited Connecting Rods, Centrifugally Cast, Accurately Machined" and "Moroloy Bearing Service". The printed catalogue distributed to the trade extols the merits of the Moroloy rod and emphasizes the engineering exactness of the tools employed in the process.

The problem here is whether or not taxpayer is a manufacturer or producer of the connecting rods. Their sale is conceded. The taxpayer's position is that it produces no new article of commerce; that its process commences as well as ends with a connecting rod, and is essentially one of the repair or restoration of the rod. It argues that there is no difference between what it does and the service formerly performed by the garage mechanic to whom the car owner committed these worn parts for repair; hence taxpayer cannot be classified as a manufacturer or producer.

We doubt the question is an open one in this circuit. In Clawson & Bals v. Harrison, supra, the conclusion was reached by the Court of Appeals of the Seventh Circuit that manufacture or production is involved in the process followed, namely, in the dismantling of discarded connecting rods and their reassembling in substantially the same physical condition as that of new

forgings; and that "it is only by an assembling and combining of the old and new parts and the addition of new materials by a series of mechanical operations that a connecting rod is produced." The court was unable to agree that the taxpayer was a mere repairer, since normally a repairer does no more than perform labor for and furnish material to the owner of an article, the article remaining the property of the one for whom the service is performed. "If", said the court, "this taxpayer is a repairer it is a repairer of its own property, not for the purpose of restoring its own property for efficient use in the ordinary operations of the taxpayer's business, but for the purpose of preparing the property for sale in the trade", Clawson & Bals v. Harrison, supra, 108 F.2d page 994.[2]

This court in United States v. Armature Exchange, Inc., 9 Cir., 116 F.2d 969, cited and in principle followed the Clawson & Bals decision. True, a different accessory was there involved and naturally there were differences in method; but·the differences are of detail rather than of principle. The court rejected arguments identical with those advanced in the Clawson & Bals case and again urged here, reaching the conclusion that an article of commerce was manufactured or produced as the result of the combining or assembling of the discarded armature core with new materials through the employment of skill, labor and machinery.[3]

In the situation before us the taxpayer treats its finished rods as distinctive products of its own workmanship, offering them for sale to the trade with the same sort of guaranty and advertising notices as usually accompany a newly manufactured article. The nature of the process is not, of course, to be judged solely by what taxpayer says of its product; the question whether the process is essentially one of production or merely of repair is to be resolved by an over-all view of taxpayer's activities, beginning with its acquisition of discarded parts and ending when a useful article of commerce emerges and is placed on the shelves for sale under taxpayer's own distinctive label. To be

---

[1] Taxpayer's estimated production was in excess of 240,000 connecting rods each year.

[2] The supreme court of Canada in Biltrite Tire Co. v. The King, 1937 Canada Law Rep. 364, reached similar conclusions in respect of a process for the reconditioning and retreading, for sale in the trade, of old and worn out automobile tires.

[3] Judge McCormick, who tried the present case, did not have the benefit of this court's opinion, later rendered, in the Armature Exchange case.

sure, a worn-out connecting rod is itself an article of commerce, as is any scrap material, but it is not a useful article qua connecting rod. For all practical purposes we think the taxpayer cannot be considered otherwise than as a producer in the automotive field.

In both the Clawson & Bals case[4] and the Armature Exchange case[5] the Supreme Court denied certiorari. We see no reason for departing from the principle of these decisions.

Reversed.

[4] 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1028.

[5] 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531.