## NIAGARA MOTORS CORPORATION v. McGOWAN, Collector of Internal Revenue.

### No. 978.

District Court, W. D. New York.

May 13, 1942.

Justin C. Morgan, of Buffalo, N. Y., for plaintiff.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Robert M. Hitchcock, of Buffalo, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

This is a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Rules of Civil Procedure, 28 U.S.C.A. following section 723c. For the purposes of this motion the allegations of the complaint are assumedly true.

Taxes have been assessed against the plaintiff in the sum of $3,833.25 based upon the alleged manufacture or production of re-babbitted connecting rods for use in automobiles. It has paid the tax and sues to recover it as an erroneous assessment.

Plaintiff buys used connecting rods, re-babbitts and sells them. The question presented is the construction of Section 606(c) of the Internal Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 609. Section 606 relates to a tax, among other things, upon automobiles. It imposes a tax upon these articles "sold by the manufacturer, producer, or importer": "(c) Parts or accessories (other than tires and inner tubes) for any of the articles enumerated in subsection (a) or (b), * * *." Subsections (a) and (b) of Section 606 enumerate automobiles, automobile trucks, and motorcycles.

▮ Clearly, connecting rods are "parts" or "accessories" of automobiles and automobile motor trucks and motor-cycles. Is one who buys used connecting rods, re·bab-bitts and sells them a "manufacturer" or "producer" within the contemplation of Section 606? In such sales plaintiff definitely comes within the definition of a "producer" as defined by Treasury Regulation 46, approved June 18, 1932. Article 4 provides that: "As used in this Act, (Act of 1932 supra), the term 'producer' includes a person who produces a taxable article by processing, manipulating or changing the form of an article, or produces a taxable article by combining or assembling two or more articles." By adding the babbitting material plaintiff changes the form of the connecting rod. If this be too narrow a construction, he "produces a taxable article by combining or assembling two parts" —the used rod and the babbitting material.

Article 41 of the Treasury Regulations defines parts and accessories, but irrespective of such definition, connecting rods are "parts" or "accessories" of an automobile.

▮ Again, Treasury Regulation 46, approved January 8, 1940, (Section 316.4) defines a "manufacturer" as including: "A person who produces a taxable article from scrap, salvage, or junk material, as well as from new material, (1) by processing, manipulating, or changing the form of an article, or (2) by combining or assembling two or more articles." The used connecting rod when purchased was "scrap", "salvage" or junk. Without re-babbitting it was useless. Plaintiff both changes the form in some respect and assembles two articles into one. If fairly within the language of the statute these regulations have the force of statute. They are fairly within the statute which imposes a tax upon a "manufacturer" or "producer".

▮ In aid of the construction of the statute, we may look to the Report of the Senate Finance Committee upon the consideration of amendments to the act in question. That committee in 1941, in such Report, said: "Rebuilt parts compete with new parts, and it appears appropriate that they should be subject to the same tax." The committee rejected an amendment to exempt rebuilt automobile parts from the payment of the manufacturers' "excise" tax.

The question presented here has been considered and decided in numerous cases which have held that one is a "manufacturer" or "producer" who combines parts or accessories such as shown here. Clawson & Bals, Inc., v. Harrison, Coll., etc., 7 Cir., 108 F.2d 991, 994; certiorari denied 309 U. S. 685, 60 S.Ct. 808, 84 L.Ed. 1028, is directly in point. In that case, as here, the question was whether the plaintiff, who rebuilt connecting rods, was a "manufacturer" within the meaning of the statute and liable to the tax, or a repairer and not so liable. "In the transactions between the taxpayer and its vendees the connecting rods, whether prepared from new forgings or from old connecting rods, are treated as newly and freshly produced automobile accessories. Neither taxpayer nor the trade recognizes that the finished connecting rods are repaired rods. Looked at from the standpoint of production and distribution in the trade the taxpayer is performing the function of a manufacturer rather than a repairer. The taxpayer is producing connecting rods for the trade in a very true sense and not repairing old connecting rods for owners or users. The fact that the taxpayer could perform for the owner of used connecting rods all of the mechanical operations which it does perform under the facts of this case, and still properly be classified as a repairer, does not require a holding that the taxpayer is a repairer when it purchases discarded rods to be used as materials for combination with other materials of the taxpayer, and by means of mechanical operations prepares what are, for all practical purposes, new connecting rods for sale in the trade."

It is urged that in the foregoing case the plaintiff did more than re-babbitt the part, but the language of the opinion is such as to exclude the belief that it was

intended to hold that the statute does not apply where only two parts are combined. The entire reasoning is against the view expressed by the plaintiff here. We note again that the statute reads: "combining or assembling two or more articles."

In United States v. Armature Exchange, 9 Cir., 116 F.2d 969, 971, the taxpayer acquired used armatures and by the use of the old core and new material turned out what were called "rebuilt armatures." Among other things, the court said: "The article resulting from the use of the discarded core with new materials, and through the employment of skill, labor and machinery, is, as it seems to us, a manufactured and produced article of commerce. Such an article produced in quantities under a trade name and placed in stock for future sale must be classified as a manufactured or produced article."

In United States v. J. Leslie Morris Co., Inc., 9 Cir., 124 F.2d 371, 372, the question was whether the sales of reconditioned automobile connecting rods were taxable under section 606(c), supra. The court held that they were. Among other things, the court said: "The question whether the process is essentially one of production or merely of repair is to be resolved by an over-all view of taxpayer's activities, beginning with its acquisition of discarded parts and ending when a useful article of commerce emerges and is placed on the shelves for sale under taxpayer's own distinctive label. To be sure, a worn-out connecting rod is itself an article of commerce, as is any scrap material, but it is not a useful article qua connecting rod. For all practical purposes we think the taxpayer cannot be considered otherwise than as a producer in the automotive field."

The court cites with approval Clawson & Bals, Inc., v. Harrison, supra.

United States v. Moroloy Bearing Service of Oakland, Ltd., 9 Cir., 124 F.2d 373, 374, is a companion case to United States v. J. Leslie Morris Co., Inc., supra. There it was claimed that the taxpayer exchanged rods for worn rods and charged only for the repair, as though it had been made on the turned-in worn rod. The court found, however, that there was a different method of procedure; that the taxpayer acquired large quantities of worn connecting rods which had been salvaged by wreckers or traded in by jobbers, and after having processed them placed them on its shelves under its own stock number and trade name. "These finished rods it disposed of, on order, for a price. The price might be paid wholly in money, or partly in money and partly in discarded connecting rods turned or traded in by purchasers. Taxpayer acquired title to the used rods and, on disposition after processing, parted with its title in return for a consideration in money or money's worth. We see in this practice no element of 'charge for repairing', nor any reason for believing that the transactions did not result in taxable sales."

In United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589, 590, the taxpayer purchased and rebuilt automobile generators and armatures which had become useless. Ninety-five percent of the sales of the rebuilt generators and armatures were sold on "an 'exchange basis,'" the purchaser turning in in part payment used or defective generators or armatures. The rebuilt generators were sold at prices approximating one-half the prices of new articles. The court found that the amount of labor and material which went into the defective generators and armatures was small. The court held that the taxpayer was liable as a "manufacturer" or a "producer." Among other things, it said: "There appears to be no very persuasive reason why rebuilt automobile parts, which compete with newly manufactured parts for public favor, should not be subject to the same tax." This case cites with approval United States v. Armature Exchange, Inc., supra, 116 F.2d 969.

In Replacement Unit Co. v. United States, of America,[1] N. D. of Ohio No. 19468, filed December 17, 1941 (Standard Federal Tax Service 1942 page 9401), it was held that plaintiff was liable for the tax in producing and selling a usable clutch from salvaged parts of second-hand clutches by the addition of new parts. The court said: "The materials which the plaintiff received had no use until remade by the plaintiff's process. It produced and sold a marketable clutch, without regard to which of the parts were new or which were old. It was not doing a repair job; it was manufacturing or producing clutches for sale as completed articles."

In Federal-Mogul Corp. v. Smith, Collector, S.D. of Ind.,[1] No. 10,058 at Law, February 23, 1940, (Standard Federal Tax Service 1940, page 9837) the plaintiff rebabbitted used connecting rods and sold

---

[1] No opinion for publication.

them. It was there held that the plaintiff was liable to pay the tax.

The plaintiff cites Con-Rod Exchange Co., Inc., v. Hendrickson, D.C., 28 F.Supp. 924; J. Leslie Morris, Inc., v. United States, decided July 24, 1940; Moroloy Bearing Service of Oakland, Ltd. v. United States, decided July 16, 1940, by the D. C. for the S. Div. of the N. D. of Cal. The Con-Rod case, supra, was decided by the District Judge who also decided the case of Armature Exchange, Inc., v. United States, D.C., 28 F.Supp. 10. This latter case was reversed 116 F.2d 969, supra. The judge in deciding the Con-Rod case, in which no appeal was taken by the government, based his decision upon the construction of the meaning of the words "manufacturer" and "producer", as given in his decision in the Armature case. The Moroloy case was also reversed, as seen in 124 F.2d 373, supra, and the Morris case, also, was reversed as seen in 124 F.2d 371, supra. A. P. Bardet et al v. United States,[1] D.C. N.D.Cal. Case 203641, decided May 18, 1938 (id Prentice-Hall Fed. Tax Current Decisions for 1938, p. 5507), supports plaintiff's contention.

■ The plaintiff urges that the motion should be denied, because it might be able to show that the size of the babbitt metal was small as compared with the size of the connecting rod; that the original identifying symbol or trade-mark was not removed; and that the re-babbitted rod was sold as a second-hand article. It is not believed that proof of any or all of such matters would be material. Babbitting of connecting rods is essential to the use of the connecting rod. Proper and sufficient babbitting is absolutely necessary to the operation of the automobile. Whether they are sold as second-hand articles makes no difference, because they must be equivalent in usefulness to first-hand articles. While certain of the cases hereinbefore cited refer to the removal of identifying symbols or trade-marks, whether removed or not can make no difference where the article, as here, when rebuilt or re-babbitted, is new so far as the purpose of its use is concerned. Plaintiff was not a "repairer" as that word is ordinarily understood. It applies where one repairs for use of an owner or his own use.

The motion for a dismissal must be granted.

---

[1] No opinion for publication.