**CLAWSON & BALS, Inc. v. UNITED STATES.**

No. 47 C 1595.

United States District Court
N. D. Illinois, E. D.

Oct. 20, 1949.

Halfpenny & Hahn, Chicago, Ill., for plaintiff.

Otto Kerner, Jr., United States Attorney for the Northern District of Illinois, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is a suit wherein plaintiff corporation seeks a refund of taxes paid under protest, which taxes were assessed upon plaintiff as a manufacturer under Section 3403 of the Internal Revenue Code, 26 U.S.C.A. § 3403.

Plaintiff is engaged in the business of rebabbitting and regrinding used automobile connecting rods. The rebabbitting process has been adequately described in a previous suit between the two parties, Clawson & Bals v. Harrison, 7 Cir., 108 F.2d 991, and there is, therefore, no necessity for further description here. The regrinding process can be described briefly. A non-babbitt connecting rod has a brass bushing within the small end, which plaintiff removes. The rod is then cleaned of grease, dirt and carbon. A cap and a shank that match one another with respect to inside diameters are selected, and pressure is exerted laterally to squeeze the shank and cap, making the inside diameter of the large end elongated, and gaining metal to be ground out. The cap is removed from the shank, and the split of the shank is ground down, so as to restore the inside diameter of the large end to a fairly round shape of smaller diameter than before the squeezing and grinding. In the squeezing, the bolt holes sometimes become squeezed, and the holes are then reamed out and their edges beveled. The studs are rethreaded and buffed, and the splits are buffed. The cap and shank are then assembled and the nuts put on. The inside diameter of the large end is beveled at the faces, and the high spots of the inside diameter are bored out. The cap and shank are then pressed together and the nuts retightened. Then the faces are ground, followed by grinding of the inside diameter. The rod is then ground across the width of the splits and polished

to remove grinding marks. A brass bushing is inserted into the small end, oil holes are drilled through the bushing, and its edges are beveled. It is left to the customer to ream out the inside diameter of the brass bushing in the small end to fit the piston pin. The large and small ends of the rod are aligned, the rod being junked if alignment could not be accomplished. If aligned, the rod is waxed, boxed and sent to the customer.

It is, therefore, plaintiff's position that it is a repairer, and not a manufacturer or producer of rods. Issue was joined and a trial of the cause was had without a jury. The matter was then taken under advisement by the Court upon the briefs of the parties. At the end of plaintiff's case, the Government moved for summary judgment, which motion was also taken under advisement and is now denied.

It appears that the taxpayer sold the connecting rods processed by it on the basis of an outright price and an exchange price, the exchange price applying where the customer sent in a used rod with his order. The exchange price added to the forging value determines the cost of a complete rod outright. Plaintiff returned and paid manufacturer's excise taxes upon all rebabbitted rods it sold, but, in computing the tax, did not include in the taxable price the amount allowed the customer for used rods. The taxpayer paid no tax whatever upon the connecting rods reconditioned by regrinding. The Commissioner of Internal Revenue assessed a deficiency in the sum of $89,315.15 which resulted from including the credit given customers for the used rods as part of the taxable price and from the Commissioner's ruling that the rods reconditioned by grinding were equally taxable with the rebabbitted rods. The price charged where the customer received back his own rods was, however, held as exempt, and no deficiency was assessed on this amount.

 The law appears to be well settled that plaintiff's rebabbitting operation constitutes manufacture or production within the meaning of the statute. As a matter of fact, the leading case under Section 3403

is the previous case between these parties—Clawson & Bals v. Harrison, 7 Cir., 108 F.2d 991, certiorari denied 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1028—in which the decision was adverse to the taxpayer. It has been followed in the following cases: U. S. v. Armature Exchange, Inc., 9 Cir., 116 F.2d 969; certiorari denied, Armature Exchange, Inc. v. U. S., 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531; U. S. v. J. Leslie Morris Co., 9 Cir., 124 F.2d 371; U. S. v. Moroloy Bearing Service, 9 Cir., 124 F.2d 373; U. S. v. Armature Rewinding Co., 8 Cir., 124 F.2d 589; Monteith Bros. Co. v. U. S., 7 Cir., 142 F.2d 139, and Niagara Motors Corp. v. McGowan, D.C.N.Y., 45 F.Supp. 346. Although the previous decision cannot be considered as res adjudicata, since different tax years are involved, the law remains the same and the facts are essentially the same. Following are the pertinent sections of the previous Clawson case [108 F.2d 993]:

"Plaintiff questions the application of the term 'scrap' to used rods and states that there is nothing in the evidence from which it can be determined what the court meant by the term 'scrap.' But as revealed by the foregoing excerpt from its memorandum the District Court meant by 'scrap' simply 'worn out connecting rods', automobile parts which as a result of use were unfit to perform the function for which they had been designed, and which could not perform their original function until they had been re-made in respect to certain essential and most characteristic parts. The District Court concluded that the operations involved in this process constituted manufacturing or producing within the meaning of the pertinent statutory provision.

\*　\*　\*　\*　\*　\*

"As disclosed by the evidence in the instant case the taxpayer purchases the discarded connecting rods and by a dismantling or disassembling operation reduces them to substantially the same physical condition as that of the new forgings when the holes have been bored in them, preparatory to rebabbitting and bushing operations and to the combining of the cap and arm. At that stage the used connecting rod has been

reduced in form to some of the parts of the original connecting rod; and in order to transform it into a connecting rod there must be an assembling of these parts with other materials which are just as essential as the parts salvaged from the old connecting rod; and it is only by an assembling and combining of the old and new parts and the addition of new materials by a series of mechanical operations that a connecting rod is produced. Furthermore, the mechanical operations and the processes of combining old with new material required to make a saleable connecting rod out of the usable parts of an old connecting rod do not differ substantially from those required to produce a saleable connecting rod from a fresh forging, and the taxpayer concedes that this process is manufacturing or producing within the revenue act.

"There is obvious difficulty in treating the taxpayer as a repairer in view of the normal concept of the relation of a repairer to the repaired article. Ordinarily a repairer furnishes labor and material to the owner of some article for the purpose of restoring the article to its normal condition. The article remains the property of the one for whom the service is performed. If this taxpayer is a repairer it is a repairer of its own property, not for the purpose of restoring its own property for efficient use in the ordinary operations of the taxpayer's business, but for the purpose of preparing the property for sale in the trade. In the transactions between the taxpayer and its vendees the connecting rods, whether prepared from new forgings or from old connecting rods, are treated as newly and freshly produced automobile accessories. Neither taxpayer nor the trade recognizes that the finished connecting rods are repaired rods. Looked at from the standpoint of production and distribution in the trade the taxpayer is performing the function of a manufacturer rather than a repairer. The taxpayer is producing connecting rods for the trade in a very true sense and not repairing old connecting rods for owners or users. The fact that the taxpayer could perform for the owner of used connecting rods all of the mechanical operations which it does perform under the facts of this case,

and still properly be classified as a repairer, does not require a holding that the taxpayer is a repairer when it purchases discarded rods to be used as materials for combination with other materials of the taxpayer, and by means of mechanical operations prepares what are, for all practical purposes, new connecting rods for sale in the trade."

Of course, in the foregoing case, the taxability of reground rods was not in issue—only rebabbitted rods were considered. Despite the fact that with the exception of the wrist pin bushing and shim stock, no new material is added in the regrinding process, the Court is of the opinion that the rationale of the prior case and the other cases on this subject, is such that the process should be included within its purview. There are several reasons for this conclusion: (1) The used rods received by plaintiff were scrap, i. e., unfit to perform their proper function as connecting rods until re-processed or remade by plaintiff, regardless of whether they were rebabbitted or reground; (2) The title theory, i. e., if plaintiff is a repairer, it is a repairer of its own property; (3) Plaintiff is producing rods for use in the automotive trade in competition with the producers of new rods. In regard to this last point, a footnote in the case of U. S. v. Armature Rewinding, Co., supra, [124.F.2d 592] explains its significance: "Congress in 1941 refused to amend the act to expressly exempt rebuilt automobile parts from payment of the manufacturers' excise tax. The Senate Committee on Finance in its report on this subject (S. Rep. No. 673; 77th Cong., 1st Sess. [Part. 1] page 48) said, in part: 'There are several decisions of the United States circuit courts of appeals holding rebuilt parts and accessories to be subject to the manufacturers' tax. Rebuilt parts compete with new parts, and it appears appropriate that they should be subject to the same tax. Accordingly, no change has been made.' "

■ Plaintiff further contends that, even if it be held to be a maunfacturer of connecting rods and taxable as such, the amount of the credit given for the old rods should not be considered part of the price.

This position is untenable. The price is the total sum paid for the goods, whether it be entirely in money or not. If these connecting rods were paid for in some instances partly in money and partly by delivery of a used rod, the price on such sales is the exchange price as listed in the price list plus the credit allowed for the forging.

For the foregoing reasons, judgment will, therefore, enter for the defendant.